**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 20 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JUANITA WRIGHT, DAVID L.
WRIGHT, D. DUSTIN MAYBURY,
NATHAN D. WRIGHT, a minor, by
and through his mother and next
friend, Juanita Wright,

      Plaintiffs-Appellants,

    v.

CITY OF ST. FRANCIS, KANSAS;
TROY D. KRENNING; JEFF
SCHAFER; STEVE GUESS; BILL
DUFOSSE; RUSSELL BLACK;
CHARLIE CLINE; SCOTT BISKIE,
Agent, Kansas Department of
Revenue; ALAN HONEYMAN,
Agent, Kansas Department of
Revenue; and MICHAEL EELLS,

      Defendants-Appellees,

    and

KARLA PIERCE, Acting Secretary of
Kansas Department of Revenue;
KANSAS DEPARTMENT OF
REVENUE,

      Defendants.

No. 02-3337

(D. Kansas)

(D.C. No. 98-CV-1156-DWB)

## ORDER AND JUDGMENT[*]

Before **HENRY**, **HOLLOWAY**, and **ANDERSON**, Circuit Judges.

Juanita, David, and Nathan Wright, and D. Dustin Maybury appeal (1) the district court's order dismissing on qualified immunity grounds their 42 U.S.C. § 1983 Fourth Amendment claims against three Kansas Department of Revenue (KDOR) agents who searched the Wrights' home on January 17, 1997; and (2) a magistrate judge's grant of summary judgment against them on their Fourth Amendment claims against the City of St. Francis, Kansas; its police chief, Troy Krenning; and five of its police officers (Russell Black, Charlie Cline, Bill Dufosse, Steve Guess, and Jeff Schafer). We affirm in part, vacate in part, and remand for further proceedings.

In particular, we conclude that the KDOR agents conducted the search of the Wrights' home pursuant to a valid warrant and acted reasonably in light of the information that they had been provided. Accordingly, the district court properly concluded that the agents are entitled to qualified immunity. As to one of the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

Wrights' claims against the City of St. Francis—an excessive force claim arising out of the search of the Wrights' residence—we conclude that the magistrate judge erred in granting summary judgment to the City.  As to the remaining claims, however, we conclude that magistrate judge properly held that the City, Chief Krenning, and the individual police officers are entitled to summary judgment.

## I.  BACKGROUND

During late 1996 and early 1997, Juanita and David Wright became involved in a series of disputes with law enforcement officers from the KDOR and the City of St. Francis, Kansas.  As a result, the Wrights, their son Nathan, and D. Dustin Maybury, Mr. Wright's stepson, filed this 42 U.S.C. § 1983 action against KDOR agents Scott Biske, Michael Eells, and Alan Honeyman; St. Francis Police Chief Troy Krenning; St. Francis police officers Black, Cline, Dufosse, Guess, and  Schafer; and the City of St. Francis.

These § 1983 claims involve four discrete incidents: (1) the execution of a search warrant on the Wrights' home on January 17, 1997 by KDOR Agents Biske, Eells, and Honeyman; (2) the February 17, 1997 arrest of Mr. Wright by Chief Krenning for several traffic violations; (3) the June 6, 1997 arrest of David Wright and Juanita Wright for obstruction of the legal process and fleeing and

eluding an officer; and (4) the October 30, 1997 arrest of Mr. Wright for threatening Chief Krenning.

The dispute between the Wrights and law enforcement officials began sometime late in 1996, when Chief Krenning received reports that Mr. Wright had not paid state income taxes. Chief Krenning referred the matter to the KDOR, and Agent Scott Biske began an investigation. The investigation confirmed that Mr. Wright had been doing business as Wright Carpet Sales & Installation since 1993 and had reported sales income for the years 1993, 1994, and 1995. KDOR records indicated that David Wright had not filed a Kansas Individual Income Tax Return for the tax years 1993, 1994, and 1995.

In January 1997, KDOR Agents Biskie and Eells went to St. Francis to meet with Chief Krenning and pursue their investigation. According to Agent Eells, Chief Krenning told them that there were many firearms in the Wrights' house—"by the doors, windows, and couch." Aplts' App. at 461. After discussing Mr. Wright's prior encounters with the St. Francis Police Department, Agents Biske and Eells decided that rather than interviewing Mr. Wright, they should obtain a search warrant for the Wrights' home.

## A. The January 17, 1997 Search of the Wright Residence

Based on the information obtained from the police department, Agent Biske prepared an affidavit and application and obtained a search warrant from a state court magistrate. The affidavit included information about Mr. Wright's failure to pay taxes but did not include information about the Wrights' allegedly violent tendencies or their alleged possession of firearms.

On January 17, 1997, Agents Biske, Eells, and Honeyman and St. Francis Police Officer Cline knocked on door of the Wrights' house and then entered with guns drawn. The agents ordered the four plaintiffs to go into the dining room and placed Mr. and Mrs. Wright in handcuffs. The agents held the plaintiffs there for four hours. The only weapon discovered during the search was a broken BB gun.

During the search, Chief Krenning and St. Francis Police Officers Schafer and Black remained outside to serve as backup for the entry team. Chief Krenning was stationed a block or two away from the house. Neither Chief Krenning nor Officers Schafer and Black ever entered the Wright residence.

## B. The February 7, 1994 Arrest for a Near Automobile Collision

On February 7, 1997, Chief Krenning and David Wright were driving in opposite directions on Washington Street. Mr. Maybury was a passenger in Mr. Wright's van. According to Chief Krenning, Mr. Wright's van appeared to

swerve into Chief Krenning's lane. Chief Krenning turned into the curb in order to avoid a collision. He then activated his emergency lights and called for a back-up officer. Mr. Wright continued to drive the short distance to his home, and Chief Krenning followed him. Mr. Wright admitted that, one to one and a half blocks before he reached his house. he saw Chief Krenning's police vehicle's lights flashing

As Mr. Wright and Mr. Maybury stepped out of the van, Chief Krenning got out of his car and announced that Mr. Wright was under arrest. Mr. Wright uttered some profanity to Chief Krenning and continued walking. Then, Chief Krenning spayed mace in Mr. Wright's face, grabbed him around the neck, shoved his arms behind him, threw him to the ground, and stuck a knee in Mr. Wright's back as he handcuffed him. Officer Schafer arrived on the scene, placed Mr. Wright in his police car, and drove him to the courthouse.

The City of St. Francis charged Mr. Wright with one count of battery on a law enforcement officer, one count of obstruction of official duty, one count of reckless driving, one count of fleeing and eluding a police officer, and two counts of failure to stop at a stop sign. Mr. Wright requested and received a jury trial before a state magistrate judge on the charges arising out of this incident. He was convicted on all charges except fleeing and eluding a police officer.

Mr. Wright appealed his municipal court conviction to a state district court. The district court affirmed the convictions, ruling that Mr. Wright was not entitled to a second jury trial. Mr. Wright then appealed to the Kansas Court of Appeals, which held that Mr. Wright was entitled to a de novo jury trial in the district court. On remand, the county attorney elected not to retry the case.

### C. The June 6, 1997 Stop to Investigate a Motorcycle Violation

On June 6, 1997, St. Francis police officer Russell Black observed Mr. Wright driving an older model van. The van backfired near Officer Black's house, and Officer Black believed that Mr. Wright had done this intentionally. Officer Black talked to Chief Krenning, who advised Officer Black that Mr. Wright was suspected of driving a motorcycle without a license.

Later that day, Officer Black stopped a pickup truck driven by Juanita Wright, intending to investigate the backfiring incident and the information about Mr. Wright's having unlawfully driven a motorcycle. Mr. Wright was a passenger in the truck.

Officer Black began questioning the Wrights. According to Officer Black, after he stated that there were no charges pending against Mrs. Wright, Mr. Wright responded that he and his wife were not required to talk to Officer Black. Mr. Wright then told Mrs. Wright to drive away. According to Mrs. Wright, she

asked Officer Black if he had stopped her for anything, if he had a warrant for Mr. Wright's arrest, and if he was charging her with anything. After Officer Black responded negatively to all three questions, Mrs. Wright asserts, she then said she was going home to call her attorney. Officer Black then said "Okay."

While Officer Black was engaged in conversation with the Wrights, Officer Dufosse arrived on the scene. However, before Officer Dufosse could get out of his patrol car, the Wrights' truck sped away. Officer Black turned to Officer Dufosse, yelled that the Wrights were running, and told him to follow them. Officer Dufosse turned on his lights and siren and followed the Wrights' truck, and Officer Black also pursued the Wrights with his lights and siren on. After several blocks, the Wrights pulled into their driveway.

As the Wrights got out of their car, the officers informed them that they were being placed under arrest for fleeing and eluding and obstruction of legal process. They were taken to police headquarters. David Wright was charged with four offenses. He later entered a diversion agreement providing that the charges would be dismissed with prejudice as long as he obeyed all the laws of the United States, the State of Kansas, and the City of St. Francis for a period of one year. The diversion agreement also provided that, upon its execution, the charges against Mrs. Wright would be dismissed.

## D. The October 30, 1997 Arrest for Making a Threat

In October of 1997, Chief Krenning reported to the county sheriff that he had received a threatening phone call from Mr. Wright. The sheriff obtained an arrest warrant, and on October 30, 1997, two St. Francis police officers went to the local bowling alley to execute it. Apparently, the officers had seen Mr. Wright's vehicle at the bowling alley and knew he would be there. Chief Krenning was also at the bowling alley that day, though it is unclear whether he was off duty. Shortly after the officers arrived at the bowling alley, a confrontation between Chief Krenning and Mr. Wright occurred. According to Mr. Wright, Chief Krenning told him that he was under arrest, knocked a plate of food out of his hands, took his left arm and jerked it behind him and shoved him into one of the police officers. Mr. Wright was eventually handcuffed and placed in a police vehicle.

Subsequently, the county attorney dismissed the criminal threat charge against Mr. Wright. The dismissal was based on the fact that witnesses had become unavailable to testify—Chief Krenning and his family had moved away from the area by this time.

## E. The Plaintiffs' § 1983 Claims and the Rulings of the District Court and the Magistrate Judge

The Wrights and Mr. Maybury filed this 42 U.S.C. § 1983 action against KDOR agents Biske, Eells, and Honeyman; the City of St. Francis; Chief Krenning; and St. Francis police officers Russell Black, Charlie Cline, Bill Dufosse, Steve Guess, and Jeff Schafer. The Wrights and Mr. Maybury alleged that as to each of these four incidents, the KDOR agents and St. Francis police officers involved had violated their Fourth Amendment rights by acting without probable cause to search, detain, or arrest them, and, as to the January 17, February 7, and October 30 incidents, by applying excessive force.

In the first order here at issue, the district court concluded that the KDOR Agents Biske, Eells, and Honeyman are entitled to qualified immunity as to the claims alleging a lack of probable cause and the use of excessive force. The district court reasoned that the agents had entered the Wrights' home pursuant to a facially valid warrant and that, although they had drawn their weapons, they had reasonably relied upon Chief Krenning's statements that the Wrights had violent tendencies and possessed firearms. The court also noted that "there does not appear to be any allegation [that the KDOR agents] continued to brandish or point any weapons after the initial entry and handcuffing of David and Juanita Wright." Aplts' App. vol. I, at 185 (District Court's Memorandum Order, filed March 11, 1999).

-10-

The parties then agreed to proceed before a magistrate judge. In an August 11, 2001 order, the magistrate judge made several rulings that the Wrights and Mr. Maybury challenge here.

First, the court held that, given the language in the pretrial order and in other pleadings, the plaintiffs had sued Chief Krenning and the St. Francis police officers only in their official capacity. As a result, the plaintiffs could not pursue damages claims against these defendants.

Second, the magistrate judge held that the City was entitled to summary judgment on the challenge to the January 17, 1997 search. He reasoned that the warrant for the search was supported by probable cause and that Chief Krenning and the individual officers could not be held responsible for the allegedly excessive force used by the KDOR agents in executing the warrant.

Third, as to the incident on February 7, 1997, the magistrate judge ruled that Officer Schafer was entitled to summary judgment because there was no evidence indicating that he had participated in Mr. Wright's arrest. As to Chief Krenning, the magistrate judge concluded that he too was entitled to summary judgment. Here, the court reasoned that the arrest and prosecution were supported by probable cause. However, as to the excessive force claim against Chief Krenning, the magistrate judge found that there were disputed issues of fact rendering summary judgment unwarranted.

-11-

Fourth, as to the arrest on June 6, 1997, the magistrate divided the incident into two phases: (a) the Wrights' initial pulling away from the stop; and (b) their continuing to drive away after the police officers engaged their sirens and alarm lights. As to the initial pulling away, the magistrate concluded that there were controverted issues of material fact as to whether the arresting officers had probable cause; it therefore denied summary judgment to the City on the claims arising out of this phase of the incident. As to the continued driving after police sirens and lights were engaged, the court granted summary judgment to the City on Mrs. Wright's claim but denied summary judgment on Mr. Wright's claim. He reasoned that Mrs. Wright was driving, and so it was clear that she had fled the officers and that her arrest and prosecution were supported by probable cause. In contrast, Mr. Wright was a passenger, and so there were factual disputes as to whether he could be held responsible for Mrs. Wright's decision to drive away.

Fifth, as to the October 30, 1997 incident, the magistrate judge granted summary judgment to the City insofar Mr. Wright alleged wrongful arrest. The magistrate judge reasoned that Mr. Wright had been arrested pursuant to a valid warrant. However, the magistrate further concluded that there were controverted issues of fact as to whether Chief Krenning had used excessive force in effecting the arrest.

II.  DISCUSSION

The Wrights and Mr. Maybury now challenge these rulings.   For the reasons set forth below, we conclude that we lack jurisdiction over Mr. Wright's challenges to his February 7, 1997 and October 30, 1997 arrests.  We further conclude that: (1) the district court properly concluding that KDOR agents Biske, Eells and Honeyman were entitled to qualified immunity; (2)  the magistrate judge did not abuse his discretion in ruling that the Wrights and Mr. Maybury could not pursue their claims for damages against Chief Krenning and St. Francis Police Officers Black, Cline, Dufosse, Guess, and Schafer; and (3) the magistrate properly granted summary judgment to the City of St. Francis on all of the remaining claims—except the excessive force claim arising out to the January 17, 1997 search of the Wrights' home.  As to that claim, we conclude that the record does not establish that the City is entitled to summary judgment.

## A.  Jurisdiction

We must first consider whether we have jurisdiction over this appeal.  Ordinarily, an appealable final judgment is one that terminates "all matters as to all parties and causes of action."  D & H Marketers, Inc. v. Freedom Oil & Gas, Inc., 744 F.2d 1443, 1444 (10th Cir. 1984) (en banc); 28 U.S.C. § 1291 (establishing appellate jurisdiction over "final decisions"); Fed. R. Civ. P. 54(b) (providing that a decision is not final "which adjudicates . . .  the rights and

liabilities of fewer than all the parties."). Here, a final judgment had not yet been entered resolving all of the plaintiffs claims against all of the defendants. Nevertheless, under Fed. R. Civ. P. 54(b), the district court "may direct the entry of final judgment as to one or more but fewer than all the claims . . . upon the express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Under Rule 54(b), "the exercise of appellate jurisdiction is proper if the court of appeals is satisfied that the district court did not abuse its discretion in certifying the appeal. " Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1238 n.1 (10th Cir. 2001).

Here, the magistrate judge entered final judgment pursuant to Fed. R. Civ. P. 54(b) on the following claims: (1) the rulings concerning the January 17, 1997 search; (2) the ruling that all claims against the individual defendants were asserted in their official capacities only and a related ruling dismissing all of the plaintiffs punitive damages claims; and (3) the ruling dismissing all of Mrs. Wright's claims arising out of the June 6, 1997 traffic stop. We discern no abuse of discretion in the district court's entry of final judgment on these claims and therefore conclude that we have jurisdiction to consider the Wrights' and Mr. Maybury's challenges to these rulings.

However, the magistrate judge further found that the rulings regarding the arrests of February 7, 1997 (when Mr. Wright allegedly swerved his car toward Chief Krenning's car) and October 30, 1997 (when Mr. Wright was arrested in the

-14-

bowling alley) were  not  final orders under Fed. R. Civ. P. 54(b).    Accordingly, we lack jurisdiction to review those rulings.

Finally, we note that in their notice of appeal, the Wrights and Mr. Maybury sought to challenge not only the various rulings of the magistrate judge, but also the ruling of the district court dismissing the claims against the KDOR agents on qualified immunity grounds.  At the time that the Wrights filed their notice of appeal, the district court had not certified that ruling as a final judgment under Fed. R. Civ. P. 54(b).

However, after the notice of appeal was filed, the district court did certify this ruling as a final judgment.  Accordingly, we now have jurisdiction to review that ruling as well.  See Lewis v. B.F. Goodrich Co., 850 F.2d 641, 645 (10th Cir. 1988) (holding that a premature notice of appeal from an interlocutory order disposing of less than all the claims could be cured by a subsequent certification order under Rule 54(b) or a final disposition of the remaining claims).

### B.  Grant of Qualified Immunity to the KDOR Agents Conducting the January 17, 1997 Search

The Wrights and Mr. Maybury argue that the district court erred in dismissing their claims against KDOR agents Biske, Eells, and Honeyman on qualified immunity grounds.  They explain that the Wrights and Mr. Maybury are not challenging the search itself, which was authorized by a warrant.  Instead,

they maintain that the KDOR agents used excessive force in conducting the search.

In particular, the Wrights and Mr. Maybury note that even though the KDOR agents later testified that Chief Krenning had informed them of the Wrights' allegedly violent tendencies and their possession of firearms, the affidavit submitted in support of the search warrant did not include these facts. They also note that the KDOR agents were investigating a non-violent crime (the failure to file tax returns). Finally, the Wrights and Mr. Maybury state that there were means other than a search of the Wrights' home that the KDOR agents could have used to investigate the suspected tax violations.

We review the district court's grant of qualified immunity de novo. Pino v. Higgs, 75 F.3d 1461, 1467 (10th Cir.1996), proceeding in two stages. First, as a threshold question, we ask whether taken in the light most favorable to the plaintiffs, the facts alleged demonstrate that the defendant officials violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If we answer that threshold question affirmatively, we then ask whether the constitutional right at issue was clearly established. Id. If necessary, the second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.

The first inquiry requires us to examine the law of excessive force. We analyze excessive force claims under the "objective reasonableness" standard of

the Fourth Amendment, which asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989) (internal quotation marks omitted). Whether an officer's conduct was reasonable is evaluated from the viewpoint of a reasonable officer at the scene, recognizing that split-second decisions often must be made under dangerous and uncertain conditions. Medina v. Cram, 252 F.3d 1124, 1131 (10th Cir. 2001).

In assessing the reasonableness of force used by an officer, we consider the totality of the circumstances, including the severity of the crime being investigated, the suspects' potential threat to the safety of officers and others, and whether the suspects attempted to resist or evade arrest. Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002). In light of the facts before us here, we must also consider the applicable principles regarding the detention of citizens during the execution of a search warrant.

In particular, we note that law enforcement agents may detain a person without probable cause while executing a search warrant if justified by the circumstances. Florida v. Royer, 460 U.S. 491, 504 (1983). However, such a detention must be "carefully tailored" to the law enforcement interests used to justify it. Id.

Thus, courts have held that police officers may apply handcuffs to those who are present during a search if they have "good reason to fear violence or destruction of evidence." Torres v. United States, 200 F.3d 179, 186 (3d Cir. 1999); see also Thompson v. City of Lawrence, 58 F.3d 1511, 1516 (10th Cir. 1995) (holding that it was not unreasonable for police officers to carry weapons into a home and handcuff a suspect who had "a reputation for possessing firearms"); but see Baker v. Monroe Township, 50 F.3d 1186, 1193-94 (3d Cir. 1995) (concluding that the use of guns and handcuffs during the execution of a search warrant rendered summary judgment inappropriate on an excessive force claim because there was evidence that the police officers had no reason to feel threatened or concerned about a possible escape). However, the court must balance the interests of law enforcement against the intrusiveness of the seizure to the persons detained. See Michigan v. Summers, 452 U.S. 692, 699-705 (1981). "[A] detention conducted in connection with a search may be unreasonable if it is unnecessarily painful, degrading, or prolonged [.]" Franklin v. Foxworth, 31 F.3d 873, 876 (9th Cir. 1994).

Here, as to the law enforcement interests involved, the record establishes that, at the time they undertook the search, the KDOR agents had legitimate concerns about their safety. In particular, the Wrights and Mr. Maybury have themselves pointed to Chief Krenning's statements that the Wrights had a history of violence and that there were firearms in their home. There is no evidence in

the record indicating that it was unreasonable for the KDOR agents to rely on this information in deciding how to execute the search warrant. Moreover, although these statements of Chief Krenning were not included in the application for the search warrant, they were still part of the totality of the circumstances that the agents were entitled to consider.

As to the interests of the Wrights and Mr. Maybury, we acknowledge the intrusiveness of the agents' drawing of weapons and use of handcuffs. However, as the district court observed, the KDOR agents did exercise some restraint: "[a]lthough the [KDOR agents] entered the residence with guns drawn, there does not appear to be any allegation [that] they continued to brandish or point any weapons after the initial entry and handcuffing of David and Juanita Wright." Aplts' App. vol. I, at 185 (Memorandum Order, filed March. 11, 1999). Moreover, "none of the other family members were handcuffed[,]" and "[n]o one in the Wright family has alleged any specific, serious injury arising from the incident." Id. Because our inquiry is based on the viewpoint of a reasonable officer at the scene, see Medina, 252 F.3d at 1131, and because the officers here reasonably believed that the Wrights had a history of violence and possessed firearms, the agents' use of weapons and handcuffs does not constitute excessive force under the Fourth Amendment.

Finally, neither the fact that the KDOR agents were investigating only misdemeanor tax violations nor the fact that there may have been other

investigative avenues available to them renders their conduct unreasonable.  We agree with the district court that "although the specific charge against the Wrights was a misdemeanor under state law, it remains a very serious one"  and that there is "no requirement that search warrants may be issued only in felony cases."  Aplts' App. vol. I,  at 186-87;  Cf. Holland ex rel Overdorff v. Harrington, 268 F.3d 1179, 1193 (affirming the denial of qualified immunity when the defendant officers continued to point guns at children during a search and stating that "[w]hile the SWAT Team's initial show of force may have been reasonable under the circumstances, continuing to hold the children directly at gunpoint after the officers had gained complete control of the situation outside the residence was not justified under the circumstances");  Fraire v. City of Arlington, 957 F.2d 1268, 1276 n.29 (5th Cir. 1992) (stating that "the important distinction in [analyzing an excessive force claim] is not whether the suspect is suspected of committing a felony or a misdemeanor, but whether he is dangerous or benign").[1]

Accordingly, we conclude that even when taken in the light most favorable to the Wrights and Mr. Maybury, the facts alleged do not establish that the KDOR agents used excessive force in executing the search warrant of the Wrights' home

---

[1]  We note that the Kansas statute authorizing the issuance of search warrants does not distinguish between felonies and misdemeanors.  See Kan. Stat. Ann. § 22-2502  (stating that a search warrant shall be issued only upon a statement of facts "sufficient to show probable cause that a crime has been or is being committed").

on January 17, 1997.  The district court thus properly concluded that the agents are entitled to qualified immunity.

### C.  Dismissal of Individual Capacity Claims against Chief Krenning and the St. Francis Police Officers

The Wrights and Mr. Maybury also contend that the magistrate judge erred in refusing to allow them to amend the pretrial order to assert claims for damages against Chief Krenning and the St. Francis police officers in their individual capacities.[2]  We review that ruling only for an abuse of discretion.  Koch v. Koch Indus., Inc., 203 F.3d 1202, 1222 (10th Cir. 2000).  "A pretrial order, which measures the dimensions of the lawsuit, both in the trial court and on appeal, may be modified 'only to prevent manifest injustice.'"  Davey v. Lockheed Martin

---

[2]  The significance of the distinction between individual (or personal) capacity suits and official capacity suits is noted by the Supreme Court in Kentucky v. Graham, 473 U.S. 159 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

Id. at 165-66 (internal quotation marks and citations omitted).

-21-

Corp., 301 F.3d 1204, 1208 (10th Cir. 2002) (quoting FED. R. CIV. P. 16(E)). "The party moving to amend the order bears the burden to prove the manifest injustice that would otherwise occur." Id.

As the magistrate judge noted, the plaintiffs' complaint does not indicate whether the claims are asserted against the St. Francis defendants in their individual or official capacities. However, counsel discussed that issue during an April 20, 2000 pretrial conference. Counsel for Chief Krenning and the police officers asked if the claims against the individual defendants were asserted against them in solely their individual capacities. The plaintiffs' counsel replied, "I think that's always been alleged that way." See Aplts' App. vol. III, at 527.

After the pretrial conference, the parties proceeded to draft a pretrial order The caption of the pretrial order stated that the claims against the St. Francis police officers and Chief Krenning were asserted against them in their official capacity. See Aplts' App., vol. I, at 251. The body of the pretrial order contains the following statement: "All actions of the individual defendants were taken in their official capacity as law enforcement officers of the City of St. Francis. All claims against individual defendants are made against them in their official capacities." See id. at 252 (emphasis added).

As the magistrate judge explained:

> Based on the conversations at . . . status teleconferences, the court was under the clear impression that the qualified immunity defense had been dropped by defendants because

-22-

the only claims against them were official capacity claims. The fact that only official-capacity claims were being asserted in the pretrial order was one of the reasons the court decided during the August 8 status conference to allow supplemental briefing in connection with the motion to dismiss and motion for summary judgment previously filed by defendant Cline. While counsel for plaintiffs had numerous opportunities to inform defendants and the court of any purported errors in the pretrial order, both before the final order was filed and during conferences afterwards, the issue was never raised until plaintiffs filed their responses to defendants' dispositive motions.

In summary, there are factors indicating that suit may have initially have been brought against the individual defendants in both their official and individual capacities, *i.e.* the request for punitive damages, the assertion of a separate claim against the City of St. Francis, and the lack of substitution  of defendants with their successor in office. However, later events during the course of these proceedings establish that some defendants, faced with the uncertainty of the type of claims being asserted, initially argued for dismissal of both types of claims. Later, the remaining defendants asked for clarification from plaintiffs about the nature of the claims, and based upon that clarification, proceeded to revise the pretrial order to specifically state that all claims against them were official capacity claims, and to drop the defenses which applied only to individual capacity claims, i.e. qualified immunity. The statements in the pretrial order about the nature of the claims are clear and unequivocal, and cannot be ignored or disregarded.

Aplts' App. vol. III, at 713-14 (third emphasis in original).

In challenging this ruling, the Wrights and Mr. Maybury maintain that

aspects of the pretrial order suggest that they intended to assert individual

capacity claims.  They point to their request for punitive damages, a remedy not

-23-

recoverable from the only other remaining defendant—the City of St. Francis. See Youren v. Tintic School Dist., 343 F.3d 1296, 1307 (10th Cir. 2003). They also point to the pretrial order's raising of the issue of whether their injuries arose out of a policy of the City of St. Francis. According to the Wrights, the fact that they still sought damages even if a City policy was not implicated indicates that they were pursuing individual capacity claims.

Although these arguments indicate that the pretrial order was arguably ambiguous on the issue of whether individual or official capacity claims were involved, they do not establish that the magistrate judge abused his discretion in finding only the latter to have been asserted. The magistrate judge relied on the plaintiffs' counsel's express statements characterizing the claims as official capacity claims, both at the pretrial conference and in the pretrial order itself, and that reliance was entirely reasonable. See R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc., 835 F.2d 1306, 1308 (10th Cir. 1987) ("A pretrial order, then, is the result of a process in which counsel define the issues of fact and law to be decided at trial, and it binds counsel to that definition."). As a result, the magistrate judge did not err in refusing to allow an amendment of the pretrial order to assert individual capacity claims.

## D. Grant of Summary Judgment to the City on Claims Arising out of the January 17, 1997 Search and Arrest

Because he dismissed the individual capacity claims against Chief Krenning and the St. Francis police officers, the magistrate judge only considered whether the City itself could be held liable on the claims for unreasonable search and excessive force arising out of events of January 17, 1997. In granting summary judgment to the City, the magistrate judge reasoned that, even though Chief Krenning had allegedly provided false information to the KDOR agents about the Wrights' violent tendencies, there was, absent consideration of this allegedly false information, still probable cause to issue the warrant. The magistrate judge relied on Franks v. Delaware, 438 U.S. 154, 155-56 (1978) for the proposition that "there is no constitutional violation even if the statements were false because there was probable cause for issuance of a search warrant independent of the alleged false information." Aplts' App. vol. III, at 726-27 (Memorandum and Order, filed Aug. 12, 2001).

The Wrights and Mr. Maybury now argue that "[t]here is clear evidence from the [KDOR] agent that 'but for' [Chief][ Krenning's statements, the agents would not have sought a search warrant. . . . He 'set in motion' the events of that night as well as subsequent events." Aplts' Br. at 30.

Because the district court decided this issue on summary judgment, we review its decision de novo, applying the same standard as the district court under

Fed. R. Civ. P. 56. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir.1998). We view the record in the light most favorable to the nonmoving party. Id. Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).

In our view, the instant challenge to the search does not undermine the district court's reliance on Franks. Because it is undisputed that there was probable cause to search the Wrights' residence for evidence of a violation of the tax laws, the allegation that Chief Krenning supplied false information to the KDOR agents about the Wrights' violent tendencies is not sufficient to establish that the search was unreasonable. See United States v. Myers, 106 F.3d 936, 940 (10th Cir. 1997) (declining to address alleged falsehoods because, even without them, the information obtained by the government agents established probable cause); Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996) ("Where false statements have been included in an arrest warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit").

However, the manner in which the search was conducted is a separate question. The Wrights have contended that both the KDOR agents and City of St. Francis personnel were responsible for the agents' use of excessive force in conducting the search. Here, in rejecting this claim against the City of St.

-26-

Francis, the magistrate judge appears to have relied on the fact that the person responsible for the allegedly false statements about the Wrights' violent tendencies—Chief Krenning—did not actually enter the residence.

We do not agree with this reasoning. Absence from the scene at which the injury is inflicted is not necessarily sufficient to exonerate a defendant from a § 1983 claim. Section 1983 does contain a causation requirement. See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 518 (10th Cir. 1998) ("[A] defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation."); 1A Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims and Defenses § 6.3 (3d ed. 1997) (discussing causation requirement under § 1983). However, that causation element may be satisfied if the defendant's conduct was "'a substantial factor in bringing [the injury] about.'" Northington v. Marin, 102 F.3d 1564, 1569 (10th Cir. 1996) (quoting Restatement (Second) of Torts § 432(2)). Thus, we have concluded that when public officials "engaged in a deliberate course of conduct, complete with false information, designed to gain entry into [a] home" and when the false information was "essential to persuade [a] . . . judge to issue the order" upon which the defendants relied in gaining entry into a home, those responsible for providing the false information may have violated the Fourth Amendment—even though some of them had not entered the home themselves. See Snell v. Tunnell, 920 F.2d 673, 698-99 (10th Cir. 1990).

Here, viewing the evidence in the light most favorable to the plaintiffs (as the nonmoving parties), it appears that Chief Krenning's allegedly false statements about the Wrights may have been a substantial factor in the manner in which the search was conducted—with the KDOR agents drawing their weapons and placing Mr. and Mrs. Wright in handcuffs for a four-hour period. Although we have concluded that the KDOR agents conducting the search did not themselves act unreasonably, that conclusion is based in part on the fact that they relied on Chief Krenning's statements about the Wrights' violent tendencies. As to Chief Krenning himself, however, the reasonableness of his statements about the Wrights depends upon the information upon which he based those statements. The district court did not analyze that issue, apparently because Chief Krenning was not present at the search.

Of course, Chief Krenning is no longer a defendant in this case in his individual capacity. However, the Wrights and Mr. Maybury have alleged that their injuries were cause by a policy of the City of St. Francis, and it is possible that Chief Krenning, in allegedly reporting the Wrights' violent tendencies to the KDOR agents, acted as a policymaker for the city. See Dubbs v. Head Start, Inc., 336 F.3d 1194, 1215 (10th Cir. 2003) (stating that "[t]o be liable, the municipality must have had an official municipal policy of some nature that was the direct cause or moving force behind the constitutional violations") (internal quotation marks and citations omitted); see also Pembaur v. City of Cincinnati, 475 U.S.

-28-

469, 483-85 (1986) (finding municipal liability even when the "policy" was evinced by a single incident). In any event, the City did not address that issue in its motion for summary judgment.

Accordingly, we conclude that the district court properly granted summary judgment to the City on the plaintiffs' claims arising out of the issuance of the search warrant. However, as to the plaintiffs' excessive force claim arising out of the January 17, 1997 search, the record does not support the grant of summary judgment to the City and the case must be remanded to the district court for further proceedings.

On remand, the court should determine whether Chief Krenning's statements about the Wrights' violent tendencies constituted "deliberate falsehood[s]" or evinced a "reckless disregard for truth." See Snell, 920 F.3d at 698. If the statements satisfy this standard, the court should then determine whether they were "a substantial factor" in causing the use of force during the search." See Northington, 102 F.3d at 1569. The court should then determine whether Chief Krenning acted as a municipal policymaker when making those statements Finally, if Chief Krenning did make such false statements, if they were a substantial factor in causing the use of force, and if he acted as a municipal policymaker, the court should then determine whether that force was excessive under the circumstances known by Chief Krenning. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1313-14 (10th Cir. 2002) (discussing the

factors relevant to determining whether the application of force by a law enforcement official is excessive).

### E. Grant of Summary Judgment to the City on Claims Arising out of the June 6, 1997 Traffic Stop

Finally, Mrs. Wright challenges the district court's grant of summary judgment against her on her Fourth Amendment claims arising out of the June 6, 1997 traffic stop. As to this ruling, we also engage in de novo review. See McKnight, 149 F.3d at 1128.

As noted above, Mrs. Wright alleged that Officer Black lacked reasonable grounds to detain her during the initial traffic stop and that Officer Black and Dufosse lacked probable cause to arrest her for fleeing or attempting to elude a police officer, in violation of Kan. Stat. Ann. § 8-1568(a). In granting summary judgment to the defendants on both of those claims, the magistrate judge concluded that (1) Officer Black had a reasonable suspicion that Mr. Wright, who was a passenger in the car driven by Mrs. Wright, had violated a traffic law earlier that day by riding a motorcycle without a license; and (2) Officers Black and Dufosse had probable cause to arrest Mrs. Wright for fleeing or attempting to elude a police officer. For substantially the same reasons as set forth by the magistrate judge, we conclude that the district court properly granted summary judgment to the defendants on these two claims.

As to the initial stop, we agree with the district court that Officer Black had a reasonable suspicion that Mr. Wright had violated the motorcycle law. Accordingly, the initial detention of Mrs. Wright was also proper: the brief detention of one occupant of a car while an officer reasonably investigates a suspected violation of the law by another occupant is not unreasonable under the Fourth Amendment. See Maryland v. Wilson, 519 U.S. 408, 413-14 (1997).

As to the grounds for arresting Mrs. Wright for fleeing or eluding, we agree with the magistrate judge that under the Kansas statute, the prosecution was required to prove: (1) that the arrestee was driving a motor vehicle; (2) that the arrestee was given a visual or audible signal by a police officer to bring the motor vehicle to a stop; (3) that the arrestee willfully failed or refused to bring the motor vehicle to a stop; (4) that the police officer giving such a signal was in uniform, prominently displaying such officer's badge of office; and (5) the police officer's vehicle was marked as an official police vehicle. Kan. Stat. Ann. § 8-1568(a) (2001). Here, Mrs. Wright points to evidence arguably disputing only the third element.

However, as the magistrate judge noted, Mrs. Wright admitted in deposition testimony that, as she was driving away from the stop, she looked in the mirror, saw three police vehicles and a City pickup with lights flashing, heard the police sirens, and told Mr. Wright, "Well, I'm this close to home, I'm just going to go ahead and drive home." Aplts' App. vol. IV, at 979. We agree with the

magistrate judge that this statement is sufficient to establish probable cause as to the element that Mrs. Wright now disputes—that she willfully failed or refused to bring the motor vehicle to a stop. Cf. Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003) ("Drivers are required to respond promptly when a police officer signals them to stop. Neither belief in innocence nor apprehensions regarding the police justify failure to obey a lawful order.").

Accordingly, the magistrate judge properly granted summary judgment on Mrs. Wright's claims arising out of the June 6, 1997 traffic stop and arrest.

## III.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of the KDOR agents' motion to dismiss on the grounds of qualified immunity.  We AFFIRM the magistrate judge's ruling that the Wrights and Mr. Maybury may not pursue individual capacity claims against Chief Krenning and Officers Schafer, Guess, Dufosse, Black, and Cline.  We AFFIRM the magistrate judges' grant of summary judgment to the City of St Francis on the Wrights' and Mr. Maybury's claims arising out of the January 17, 1997 search of the Wrights' home and Mrs. Wright's claims arising out of the June 6, 1997 traffic stop and arrest—except as to the claim against the City for the use excessive force during the January 17, 1997 search.  As to that excessive force claim, we VACATE the grant of summary

judgment to the City and REMAND for further proceedings consistent with this order and judgment.


Entered for the Court,


Robert H. Henry
Circuit Judge