**GENESIS HEALTH CLUBS, INC.,**
**Plaintiff–Appellant,**

v.

**LED SOLAR & LIGHT COMPANY,**
**Defendant–Appellee.**

No. 15–3033.

United States Court of Appeals,
Tenth Circuit.

Feb. 1, 2016.

John W. Johnson, Nanette Turner Kalcik, Morris, Laing, Evans, Brock & Kennedy, Wichita, KS, for Plaintiff–Appellant.

Matthew J. Olson, Kyle P. Sollars, Stinson, Lasswell & Wilson, Wichita, KS, Edward Jay Tolchin, Offit Kurman, P.A., Bethesda, MD, for Defendant–Appellee.

Before HARTZ, PORFILIO, and PHILLIPS, Circuit Judges.

## ORDER AND JUDGMENT[*]

HARRIS L. HARTZ, Circuit Judge.

LED Solar & Light Company sold lights to Genesis Health Clubs, Inc. Dissatisfied with the lights' performance, Genesis sued LED Solar. The district court granted LED Solar a partial summary judgment on several of Genesis's claims and denied a motion for reconsideration. It then conducted a bench trial, at which it rejected the parties' remaining claims and counterclaims. Genesis appeals from the partial summary judgment. We exercise jurisdiction under 28 U.S.C. 1291 and affirm.

### BACKGROUND

Genesis, based in Kansas, operates health clubs. LED Solar, based in Virginia, manufactures and sells LED lighting. The two companies were brought together by Bruce Redinger, an independent light distributor. Redinger agreed with Paul Arnone, the president of LED Solar, "to market and implement a purchase by Genesis ... for initially replacing the lighting system at one of their health clubs with LED Solar ... lighting." Aplt.App., Vol. II at 342. According to Redinger, Arnone authorized him to make representations concerning product specifications, availability, longevity, and energy savings.

On August 11, 2011, LED Solar submitted a proposed contract "to furnish the replacement lamps for [Genesis's] building" for $82,271.50. *Id.* at 362. LED Solar "warrant[ed] watt for watt exchange a minimum of 35% deduction in wattage consumption." *Id.* at 364. Ryan Brooks, the chief financial officer of the company that owns Genesis, executed the contract later that month.

Soon after installation began, Genesis encountered problems with the lights. Brooks complained that "[t]he defect rate on these lamps is now at 73% based on our experience so far." *Id.,* Vol. III at 488. Some of the lights were returned to LED Solar and Arnone pledged to "fix them and get them right back out." *Id.,* Vol. III at 490. Brooks also complained that "the LED tubes ... are not consistent in color." *Id.,* Vol. II at 411. Then, in January

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

2012, Brooks complained of multiple light failures throughout Genesis's facility. Arnone responded that "[j]ust to[o] many are out to be product failure," but he was "coming up" to check. *Id.* Upon doing so, Arnone found "no fault with [his] lamps" and instructed Brooks to return problem lights for a refund. *Id.,* Vol. II at 395.

By the summer of 2012, the parties' business relationship had significantly deteriorated. Redinger emailed Arnone that "any chance of future business" with Genesis had been "ruined" because of "light color differences and shear [sic] nonperformance." *Id.* at 398. On August 15, Genesis returned a shipment of lights, seeking a $3,777 refund. The following month, Redinger emailed Arnone, stating that "Genesis is a mess [—] lights are out, replaced in some cases with inferior product and now diminishing in light output across the board.... I have of[f]erred to you options for return, replacement and finally financial that you have done nothing with or to any level of resolve." *Id.* at 419.

According to Redinger, at some point "Arnone agreed to refund the purchase price of the lights, if Genesis ... shipped the lights back." *Id.* at 347. Brooks testified that the agreement was reached during a conference call (of unspecified date) between Arnone, Redinger, and Brooks, and it contemplated that Genesis would "send [the lights] back in ... stages" so "the club [would not] go dark." *Id.* at 333. Brooks reiterated the agreement in an October 31, 2012 email, explaining that Genesis would be "returning all of the lights" one shipment at a time in exchange for a refund, "allowing [Genesis] to phase out the[ ] faulty lamps." *Id.* at 387.

But the return/refund process never got off the ground because of a dispute regarding whether Genesis had been properly credited for its shipment of lights in August. On the same day as Brooks's

email saying that Genesis would return the lights one shipment at a time, Arnone responded by email, telling Brooks and Redinger:

> I told both of you I cannot do anything until the product is return[ed]. If it is damaged I am sending the product to the shipper for an insurance claim. If you damaged it you will have to absorb the cost.... There is extra product shipped that has not been paid for. There is product that was exchanged but you never sent the product exchanged for back....
>
> ...
>
> Everything you have shipped back that was not damaged in handling works fine. If you ship those items back not damaged we will credit the account without any problem.... Right now [Genesis] ... owes more than the credit on the returned items plus credit for damages from the shipper that ... have not been ... credited to this account. I really do not want to do this several times[.] So please help me help you, I have been waiting for several months for the returns that you have been saying you are returning. Yet nothing has shown up that we can apply a credit to other than [a few MR 16 lights and eight 30–watt corn-cob lights.] ... Bruce please get with Ryan and get the paperwork in order and sent to me with what you are returning.

*Id.* at 388.

The next day, Redinger replied to Arnone:

> [T]he lights have not worked properly, and you have not been prompt in your commitment to refund for returned items. I have requested a "sent items bill of lading" from you ... and it is your responsibility to produce this for accounting purposes. You have your money for the entire order that was pre-

paid. We sent to you, 9 hi bays and I believe 10 tubes for a refund. We are trying to replace the defective lights with the refund dollars for the product returned.... We sent to you a bank account for refunding this way....

Just refund the high bay lights for now as this is a terrible mess. Genesis has other [lights] that are burned out but [it is] hesitant to send [them] to you as you have not refunded for the ones already sent back.... We cannot [return the lights] all at once as we cannot purchase new lights without the refund dollars that were budgeted for this project to replace your lights.

*Id.* at 386–87.

Arnone continued to insist that lights be returned. On November 3, 2012, he emailed Redinger and Brooks:

The fact is that [LED Solar] sent what was ordered correctly and [in] working order. We received a payment but not final payment. You ordered more product for exchanges and you have not sent back anything near what was shipped.

... There really is nothing to talk about at this point. You ask[ed] to return the product for credit and we agreed to that. So please follow through with your request and we will accommodate you all.

*Id.* at 386. Brooks responded on November 5: "We returned a shipment of faulty lights to you on 8/15/2012 worth a value of $3,777 and have yet to receive a refund.... We have another shipment of faulty lights ready to go, pending the receipt of the first credit." Id. The record contains no further correspondence regarding the proposed return of lights. Arnone never paid Genesis the $3,777 and Genesis never returned any more lights. Indeed, according to Genesis, "some of the bulbs are ... still installed" at Genesis's facility. Aplt. Opening Br. at 25.

Seven months after the above email exchanges, in June 2013, Genesis filed a state-court petition asserting claims of breach of contract, breach of the implied warranty of merchantability, and breach of express warranty. LED Solar removed the case to federal court based on diversity jurisdiction.

After a conference with counsel on February 6, 2014, the district court entered a pretrial order. It set forth the following claims by Genesis: (1) LED Solar "breached the parties' contract by providing defective lighting that often did not work, did not provide the energy savings guaranteed and, as such, impacted Genesis' cash flow," Aplt.App., Vol. I at 38; (2) LED Solar breached an implied warranty because the light bulbs "often did not work at all" and when the bulbs functioned "the color of the lighting varied and lacked consistency," and "[t]he lighting did not produce the wattage savings guaranteed by LED Solar," *id.* at 39; and (3) LED Solar breached express warranties concerning "a minimum of 35% reduction in [Genesis's] wattage consumption," consistent lighting color, and an "impact on Genesis's cash flow" by switching to LED's lights, *id.* Genesis sought (1) the purchase price, $82,271.50; (2) the lights' installation cost, $7,565.00; (3) compensation for the "[un]realized 35% reduction in wattage consumption"; and (4) "the damage to Genesis' business as a result of the faulty lighting." *Id.* at 41–42.

On LED Solar's motion, the district court entered summary judgment against Genesis on its claims for breach of contract, for return of the lights' purchase price, and for damages on the warranty claims measured by the reduction in value of the bulbs below their value as warrant-

ed.[1]  The district court dismissed the breach-of-contract claim on the ground that it was not "factually distinct from [Genesis's] warranty claims." Aplt.App., Vol. III at 553.  On damages, the court concluded that Genesis could not recover the purchase price because it failed to reject or revoke acceptance of the lights, and it ruled that Genesis could not recover the difference in value between the lights as delivered and the lights as warranted because such a claim was absent from the pretrial order.  Genesis unsuccessfully sought reconsideration.

The case proceeded to a bench trial, where the district court entered judgment against Genesis on its remaining claims for breach of warranty and against LED Solar on its counterclaims. *See Genesis Health Clubs, Inc. v. LED Solar & Light Co.,* No. 13–1269–JWL, 2015 WL 339366, at *16 (D.Kan. Jan. 23, 2015).  In doing so, the district court "conclude[d] that [Genesis] did not meet its burden to show that the lights failed to operate because the lights themselves were defective (and not because of issues in installation and at [Genesis's] own facility)." *Id.* at *12.  Neither party has appealed the results of the bench trial.

## DISCUSSION

### I.  Standards of Review

We review the district court's grant of summary judgment de novo, applying the same standard the district court should apply and viewing the evidence in the light most favorable to Genesis. *See McBride v. Peak Wellness Ctr., Inc.,* 688 F.3d 698, 703 (10th Cir.2012).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "If a reasonable jury could return a verdict for the nonmoving party, summary judgment is inappropriate." *Riser v. QEP Energy,* 776 F.3d 1191, 1195 (10th Cir.2015) (internal quotation marks omitted).  We review for abuse of discretion the district court's denial of reconsideration. *See Headwaters Res., Inc. v. Ill. Union Ins. Co.,* 770 F.3d 885, 899 (10th Cir.2014).

### II.  Breach of Contract

■  The district court dismissed Genesis's breach-of-contract claim because it duplicated its warranty claims. *See Lohmann & Rauscher, Inc. v. YKK (U.S.A.) Inc.,* 477 F.Supp.2d 1147, 1153 (D.Kan. 2007) (granting summary judgment on a breach-of-contract claim that was redundant of warranty claims); *Spectro Alloys Corp. v. Fire Brick Engineers Co.,* 52 F.Supp.3d 918, 930 (D.Minn.2014) (granting summary judgment when the contractual obligations were "reflected in the warranty claims"); *but see Fournier Furniture, Inc. v. Waltz–Holst Blow Pipe Co.,* 980 F.Supp. 187, 190 (W.D.Va.1997) (stating that overlap between contractual and warranty claims was "no basis for summary judgment").  Genesis does not dispute that the district court could properly remove a redundant claim at summary judgment.  But it argues that there was no redundancy here.  We disagree.

In the pretrial order Genesis claimed that "LED Solar breached the parties' contract by providing defective lighting that often did not work, did not provide the energy savings guaranteed and, as such, impacted Genesis' cash flow." Aplt. App., Vol. I at 38.  These claims are encompassed by its warranty claims.  The

---

1.  The district court also granted summary judgment against Genesis on its claim for installation costs.  Genesis does not contest

that component of the district court's summary-judgment order.

claim for breach of the implied warranty of merchantability complained of "lighting [that] did not work" and "did not produce the wattage savings guaranteed." *Id.* at 39. And the claim for breach of express warranty targeted the "guaranteed ... reduction in ... wattage consumption" and the "impact on Genesis' cash flow." *Id.* Genesis has not explained how it would have gained any advantage by retaining the contract claim.

Genesis argues that only the breach-of-contract claim embodies the allegation that the lights were defective. But both the contract claim and the warranty-of-merchantability claim encompass the allegation of defective lights. Genesis also says that only the contract claim complains of (1) delays in delivering the lights, (2) deliveries of lights that failed to meet "[t]he industry standard for bulb longevity," Aplt. Opening Br. at 19, and (3) breach of the duty of good faith and fair dealing. These allegations, however, were not mentioned in the pretrial order. "The ... pretrial order measures the dimensions of the lawsuit, both in the trial court and on appeal." *Youren v. Tintic Sch. Dist.,* 343 F.3d 1296, 1304 (10th Cir.2003) (internal quotation marks omitted). Thus, "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint." *Wilson v. Muckala,* 303 F.3d 1207, 1215 (10th Cir.2002). Regardless of whether these claims duplicated the warranty claims, Genesis could not pursue them as part of a contract claim.

## III. Breach of Warranty

Genesis also challenges the district court's rulings that it could not recover the purchase price for the lights or the difference in value between the lights as delivered and as warranted.

### A. Purchase Price

The district court held that Genesis could not recover the full purchase price because that remedy is availably only if Genesis rejected the lights or revoked acceptance of the lights, and Genesis did neither. We agree.

Under the Kansas Uniform Commercial Code, a buyer may cancel the contract and recover the purchase price by "rightfully reject[ing] or justifiably revok[ing] acceptance." Kan. Stat. Ann. § 84–2–711(1). Rejection is available for goods that "fail in any respect to conform to the contract," *id.* § 84–2–601, and it must be communicated to the seller "within a reasonable time after the[ ] [goods'] delivery or tender," *id.* § 84–2–602(1). What constitutes a reasonable time "depends on the nature, purpose, and circumstances of the action." *Id.* § 84–1–205(a).

Even after the goods have been accepted, the "buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it ... on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured." *Id.* § 84–2–608(1)(a). A buyer who revokes "has the same rights and duties with regard to the goods involved as if he had rejected them." *Id.* § 84–2–608(3). Thus, revocation requires notification to the seller "within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects." *Id.* § 84–2–608(2); *see also id.* § 84–2–607(3)(a) ("Where a tender has been accepted ... the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy....").

In the case of both remedies, the buyer's exercise of ownership or dominion over the goods may negate an attempt to cancel the contract and recover the purchase price. Under § 84–2–602(2)(a), "after rejection[,] any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller." As the Fifth Circuit understood Kansas law, "a buyer's act of dominion over the goods ... is inconsistent with a claim by the buyer that acceptance has been revoked." *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.*, 735 F.2d 177, 181 (5th Cir.1984); *see Johnson v. Gen. Motors Corp.*, 233 Kan. 1044, 668 P.2d 139, 143 (1983) ("A buyer's continued use of the goods after revocation of acceptance can constitute an acceptance of ownership and invalidate a cancellation of a sale."); *Linscott v. Smith*, 3 Kan. App.2d 1, 587 P.2d 1271, 1274 (1978) (buyers' "continued use of [mobile home] converted their rejection into an acceptance"); *cf. Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 75 (2d Cir.1986) ("[A] buyer who revokes acceptance ... must begin the search for replacement goods with reasonable dispatch and may not put off purchase until a seller offers ideal financial terms."). A buyer who abandons the return process and keeps the goods therefore cannot recover the purchase price. *See Barry & Sewall Indus. Supply Co. v. Metal–Prep of Houston, Inc.*, 912 F.2d 252, 257 (8th Cir.1990) (buyer must unequivocally and timely revoke and "not indulge in any action which would indicate that he has reaccepted the goods"); *cf. Newmaster v. Southeast Equipment, Inc.*, 231 Kan. 466, 646 P.2d 488, 492 (1982) (when the buyer had provided the seller a reasonable time to effect repairs and then returned the defective item, the buyer had "justifiably revoked

acceptance and was therefore entitled to recover the purchase price"); *Triad Systems Corp. v. Alsip*, 880 F.2d 247, 249 (10th Cir.1989) (buyer had delayed revocation based on assurances from the seller about replacing the system and "there [was] little evidence suggesting unreasonable [continued] use").

In the case before us, Genesis did not effectively reject or revoke acceptance of the lights because it never relinquished dominion over them. Despite allegedly agreeing with LED Solar to return all the lights in stages, it never returned any after reaching the agreement and continued to use them.

Genesis argues that without the $3,777 refund for an earlier (preagreement) shipment of lights to LED Solar, it was unable "to continue the return and replacement process." Aplt. Opening Br. at 25. It cites Redinger's affidavit saying that "it was clear that Mr. Arnone was aware that Genesis ... would have to find and purchase new lights to replace LED Solar['s] ... bulbs prior to removing them all from the facility." Aplt.App., Vol. II at 347.

True, a buyer's continued use of the goods after "the supposed revocation" is not inconsistent with revocation if "such use was necessary to avoid substantial hardship." *L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.*, 9 F.3d 561, 568 (7th Cir.1993), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, —— U.S. ——, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014); *see Johnson*, 668 P.2d at 143. But Genesis made no showing of substantial hardship. It offered no financial evidence that it could not afford to return any more lights without the $3,777 refund from the preagreement shipment.[2] It cites no evidence

**2.** It asserts in its opening brief that Brooks' deposition testimony is evidence that it "did

not have the funds to replace the bulbs and return another shipment." Aplt. Opening Br.

that it attempted to resolve the impasse and reach some accommodation with LED Solar for future returns. It did not even produce evidence that LED Solar was incorrect in saying that the $3,777 had been credited toward what Genesis still owed. Nor does it explain why it could not afford to return lights that were not functioning. In short, no reasonable jury could find that Genesis reasonably continued using the lights after it informed LED Solar that it wanted to return them. Genesis had no excuse for using the bulbs until LED Solar accepted the "ideal financial terms" demanded by Genesis to govern the returns. *Computerized Radiological Servs.*, 786 F.2d at 75. There was no proper rejection or revocation of acceptance of the bulbs.[3]

We conclude that summary judgment was properly entered on Genesis's claim for a refund of the purchase price.

## B. Difference in Value

 Genesis argues that the district court erred by foreclosing its pursuit of damages for the difference in value between the lights as warranted and the lights as delivered. The district court rejected the claim because it was not included in the pretrial order. We see no error. A damages theory omitted from the pretrial order is waived. *See Wilson*, 303 F.3d at 1215. Genesis contends that it should have been allowed to pursue difference-in-value damages because it would not have prejudiced LED Solar. But the district court reasonably rejected this contention. It observed that even "if the dollar amount of [Genesis's] claim would ... decrease if [the] purchase price claim changed into a difference-in-value claim[,] ... [LED Solar] was entitled to know in discovery how [Genesis] intended to measure and prove its damages, as well as the amount of those damages." Aplt.App., Vol. III at 618. Because the time for discovery had closed, the district court concluded that LED Solar would be prejudiced "from the insertion of a wholly new measure of damages at this time." *Id.* We find no abuse of discretion in that conclusion. *See Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir.2002) ("We review the denial of a motion to amend a pretrial order for an abuse of discretion.").

Genesis also complains that the district court sua sponte raised the issue. But a district court has authority to sua sponte confine the litigation to the issues identified in the pretrial order, *see, e.g., Hunt v. Orange Cty.*, 672 F.3d 606, 617 (9th Cir.2012), and LED Solar in fact raised the issue in its summary-judgment motion.

### Conclusion

The district court's orders granting partial summary judgment to LED Solar and denying Genesis's motion for reconsideration are affirmed.

---

at 34. But the cited testimony merely states that Genesis did not "want to get stuck with two $90,000 bank notes." *See* Aplt.App., Vol. II at 334. Brooks does not say that Genesis could not afford to buy new lights before being paid $3,777 by LED Solar.

**3.** We also note that it would make little sense for us to reverse the partial summary judgment and remand for further proceedings even if the district court's ruling was incorrect. As noted in the Background section, the district court ruled at the bench trial in this case that Genesis had failed to prove that the lights were defective, and Genesis has not appealed that ruling. Therefore, on remand the district court would be bound by that ruling, if not by res judicata doctrine then by the law of the case.