# United States Court of Appeals
## For the First Circuit

No. 18-1199

UNITED STATES OF AMERICA, EX REL.
CONCILIO DE SALUD INTEGRAL DE LOÍZA, INC. ("CSILO"),

Plaintiffs, Appellants,

v.

J.C. REMODELING, INC. AND JOSÉ GARCÍA-SUÁREZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Torruella, Dyk,* and Thompson,
Circuit Judges.

Víctor M. Rivera-Ríos for appellant CSILO.
Carlos J. Sagardía-Abreu and María Celeste Colberg-Guerra,
were on brief, for appellees.

June 15, 2020

---

\* Of the Federal Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.    A jury verdict and civil penalty in its favor notwithstanding, Appellant Concilio De Salud Integral De Loíza, Inc. ("CSILO") appeals the district court's decision to deny its request voiced three years into litigation, after the close of discovery, and on the eve of trial, to amend the Pretrial Order to include a discussion of damages it believes it was due under the False Claims Act.    Spotting no abuse of discretion, we affirm.

## BACKGROUND

CSILO is a non-profit organization in Loíza, Puerto Rico established in 1972 to provide a wide range of primary healthcare services for the uninsured through the use of federal funds.    Among the funds it has received over the years are those, as relevant here, from the American Recovery and Reinvestment Act ("ARRA"), which were given to CSILO "to adequately upgrade and successfully maintain the building structure for the benefit of the patients and staff."    "After grants pursuant to ARRA were extended to CSILO [in 2009], it was agreed by the Board and the Executive Director that necessary repairs were needed along the roof of the Health Center's main structure, which was suffering damages due to water infiltration."    CSILO then initiated a bidding process, at the end of which J.C. Remodeling ("JCR") was awarded the roof waterproofing project.    On May 21, 2010, CSILO and JCR entered into a formal

contract titled "CONTRATO DE OBRA ENTRE EL DUEÑO Y EL CONTRATISTA" ("the Construction Contract").

At the time, JCR was the exclusive distributor in Puerto Rico for the roof waterproofing product called Wetsuit®, and what was most appealing to CSILO about JCR's offering was its 15-year warranty on that product. Under the Construction Contract, CSILO agreed to pay JCR $135,000 for "JCR['s] waterproofing the roof of CSILO's facilities." Important to the case that went to the jury (but not so much for our purposes, so we'll be brief), is that "Article 9.2 of the Construction Contract established that JCR would guaranty the installation and sealing of the roof for the next 15 years." To CSILO, that meant that "[i]f any deficiencies would occur after performance was finished by JCR, the roofing company was bound for the following 15 years to correct it, which would include additional installation of the [Wetsuit®] system, if necessary." And bear in mind that Article 9.1 of the contract required JCR to "ensure[] that all equipment that [would] be installed [would] be new unless otherwise specified and so approved also in writing."

JCR completed its waterproofing work during the summer of 2010. But "by June 2011, the CSILO facilities began to suffer damages from newly discovered water [in]filtration." CSILO complained, verbally and in writing, of these leaks to JCR numerous times, but was met with no response. Over the course of "the next

2 to 3 years, CSILO kept communicating to JCR" about the leaks, and JCR's warranty to "provide the required services in order to fix said problem." These attempts unavailing, CSILO resorted to "fil[ing] a civil suit against JCR on April 2013 at the First Instance Court of Puerto Rico."[1] That suit prompted JCR into action, whereupon in July 2013 it returned to attempt to fix the roof. To assess the leaks, JCR used a product called Chovatek, different from Wetsuit®, relying, it claims, on verbal approval from CSILO's engineer, Celso Gonzalez, to proceed with use of that product.

CSILO ultimately realized that it had received a sieve of a 15-year warranty on Wetsuit® when JCR attempted to fix the leaky roof with the non-Wetsuit® product. CSILO was "convinced that JCR intentionally misrepresented their services to be rendered to CSILO," and that these misrepresentations "induced CSILO into entering into said Contract. CSILO was deceived by this fraudulent statement. When JCR installed the waterproof product in 2013, it not only installed it negligently, but it intentionally substituted the product with another product of inferior quality. CSILO had no knowledge of the product substitution, until after 2013." It followed that, according to

---

[1] This case, Concilio de Salud Integral de Loíza, Inc. v. J.C. Remodeling, Inc., et al., Civ. No. FCCI2013-00222, was pending as of the federal court trial.

CSILO, "[b]ecause of said misrepresentation, JCR defrauded CSILO and illegally appropriated federal funding originating from the ARRA," thereby violating the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq. And that's how this case ended up in federal court.

CSILO filed a qui tam action[2] under the FCA on November 13, 2014 against JCR.[3] The United States Government, as it is entitled under 31 U.S.C. § 3730(b)(2)-(c), declined to intervene on November 30, 2015.[4] Thereafter summons were issued to JCR. On January 26, 2017, CSILO filed its First Amended Complaint, alleging the facts described above, and, important for our purposes, requested damages "in an amount equal to three times the amount of damages that the United States ha[d] sustained because of [JCR's] actions, plus a civil penalty of not less than $5,500 and not more

---

[2] "In a qui tam action, a private plaintiff, known as a relator, brings suit on behalf of the Government to recover a remedy for a harm done to the Government." U.S. ex rel. Feldman v. van Gorp, 697 F.3d 78, 84 n.3 (2d Cir. 2012) (citing Black's Law Dictionary 1282 (8th ed. 2004) (defining "qui tam action" as "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive")). "Qui tam plaintiffs, even if not personally injured by a defendant's conduct, possess constitutional standing to assert claims on behalf of the Government as its effective assignees." Id.

[3] We refer to appellees JCR and Mr. José García-Suárez, owner of JCR, collectively as JCR.

[4] When the government declines to intervene, the relator -- here, CSILO -- can recover between 25% and 30% of the final award, with the remainder going to the government. See 31 U.S.C. § 3730(d)(2).

- 5 -

than $11,000 for each violation of 31 U.S.C. [§] 3729."[5]  JCR denied all allegations.

As parties do over the course of a lawsuit, CSILO and JCR exchanged various documents.  In response to JCR's document request for "[s]ubmitted invoices, authorizations, and/or payment approvals by CSILO and copies of payment checks," CSILO provided just those.  They also exchanged Initial Disclosures on June 26, 2016 and formulated the Joint Pretrial Conference Report on November 27, 2017.  In its Initial Disclosures CSILO stated that "computation of damages was not available as of [that] date," and the Joint Pretrial Conference Report contained no mention of anything specific to requested damages, such as a description, computation, or relevant evidence.

Over three years down the line and exactly one month before trial, on December 22, 2017, the district court held its Pretrial Conference, during which the district judge asked CSILO whether it would present any evidence on damages at trial, given that such relief was not included in the proposed Joint Pretrial Conference Report.[6]  It was then that CSILO moved the court for

_____

[5] Under the FCA, liability can result in "a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a)(1).

[6] At the conference, the district court adopted the parties' Joint Pretrial Conference Report as the court's order under Fed. R. Civ. P. 16(e) to govern subsequent proceedings.  It is this order that we will refer to as the Pretrial Order.

- 6 -

leave to amend the Pretrial Order to include a discussion of damages. JCR objected, claiming delay and prejudice, especially in light of the impending trial. The court requested further briefing on the matter, and upon receipt, it denied CSILO's request, stating:

> [JCR] points out that [CSILO] did not include a computation of damages in its Initial Disclosures; and did not produce any evidence and/or computation of damages during discovery. Moreover, it omitted from the Pretrial Report any specific request for discrete fraud damages as well as a discussion on the subject. [CSILO] has provided no compelling reason to justify the omissions. Discovery is no longer available here, to [JCR]'s detriment. Accordingly, the motion is DENIED.

U.S. ex rel. Concilio De Salud Integral De Loíza, Inc. v. J.C. Remodeling, Inc., et al., No. 14-1821 (PAD), Dkt. 92, Order at 2 (citations omitted). CSILO sought reconsideration of the denial; that too was denied.

After a seven-day trial in late January 2018, at which CSILO was barred from submitting evidence on damages, the jury found that JCR had in fact violated the False Claims Act, and the court therefore entered judgment against JCR and imposed on it a $5,500 civil penalty, as required by statute.[7] Dissatisfied with

---

[7] "[A] defendant who submits a false claim . . . is liable for civil penalties regardless of whether the government shows that the submission of that claim caused the government damages." U.S. ex rel. Davis v. District of Columbia, 679 F.3d 832, 839 (D.C. Cir. 2012) (second alteration in original) (quoting

that result and believing it is still entitled to damages,[8] CSILO now appeals.

## DISCUSSION

CSILO argues on appeal that the district court abused its discretion when it rejected its request to amend the Pretrial Order to include a discussion of damages and avoid the resultant "manifest injustice." CSILO also appeals the district court's denial of its motion to reconsider that denial. CSILO argues that JCR would not have been prejudiced or surprised by the damages amendment because JCR was always aware of the full contract price, which formed the nucleus of its damages claim: CSILO's federal complaint requested damages equal to $405,000 (three times the contract price of $135,000), and the contract itself as well as

United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1277-78 (D.C. Cir. 2010)).

[8] In its Motion to Amend the Pretrial Order, CSILO explained that it was seeking only "Fraud Damages," "damages based on the original Written Agreement" and the contract price of $135,000, as opposed to "Consequential Damages," as CSILO called it, that would have covered the amount CSILO expended on a new 2017 bid to fix the roof. CSILO explained, without citation or further detail, the decision to forego "Consequential Damages," as follows: "[The United States Government's] attorneys clarified that because this Complaint is a Qui Tam cause of action, the only real party is [the government] and not CSILO. The only damages that could be brought to the Court's attention are the direct damages that [the government] suffered based on the fraudulent acts of the person who violated the FCA. Therefore, CSILO's damages should not be considered under the FCA because CSILO is a third party relator who received the ARRA funds." Given our affirmance of the district court's decision, we need not opine upon the correctness of the government's advice.

the contract price was necessarily discussed multiple times during trial. Therefore according to CSILO, JCR's claim of prejudice and surprise is disingenuous because JCR never -- either pretrial or during trial -- objected to the admission of the contract and its price tag at any point. And so CSILO now requests that this court either find JCR liable for $405,000 or "remand the case back to the Jury for a bifurcated trial focused solely on" damages.

JCR responds that CSILO misses the point: CSILO assumes that the contract price automatically constitutes the baseline damages due under the FCA, even though the FCA does no such thing. Ultimately, JCR argues that because the parties could not rely on the contract price for damages, without the benefit of discovery on damages, CSILO's requested amendment to the Pretrial Order on the eve of trial and three years after the filing of the Complaint would have severely prejudiced and burdened JCR, and therefore the district court was right to deny CSILO's request.

We review the district court's denial of CSILO's request to amend the Pretrial Order for abuse of discretion. See Alberty-Vélez v. Corporación De Puerto Rico Para La Difusión Pública, 242 F.3d 418, 423 (1st Cir. 2001); Koch v. Koch Indus., Inc., 203 F.3d 1202, 1222 (10th Cir. 2000). "A final pretrial order is intended to control the subsequent course of the action, and can be modified only to prevent manifest injustice." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 774 (1st Cir. 2010) (internal quotation marks

omitted) (quoting Correa v. Hosp. S.F., 69 F.3d 1184, 1195 (1st Cir. 1995) (quoting Fed. R. Civ. P. 16(e))). "Therefore, '[a]n appellate court should not lightly relieve a litigant from the condign consequences of its failure to list a theory . . . at that critical stage of the proceedings,' and 'issues not included in the final pretrial order are generally waived.'" Id. (quoting Correa, 69 F.3d at 1195) (citing Ramirez Pomales v. Becton Dickinson & Co., 839 F.2d 1, 3 (1st Cir. 1988)); see also Bradford Trust Co. of Bos. v. Merrill Lynch, Pierce, Fenner, and Smith, Inc., 805 F.2d 49, 52 (2d Cir. 1986) ("Motions to reopen or to modify a pre-trial order are addressed to the sound discretion of the trial judge."); Wallin v. Fuller, 476 F.2d 1204, 1208-09 (5th Cir. 1973) ("Under the Rule 16 'manifest injustice' standard, the question whether to permit amendment of the pretrial order in the course of the trial is generally a matter within the discretion of the trial judge, and an appellate court will intervene only if the trial judge has acted arbitrarily."); Sherman v. United States, 462 F.2d 577, 579 (5th Cir. 1972).

"[T]he standard for modifying a final pretrial order is as high as it is to ensure everyone involved has sufficient incentive to fulfill the order's dual purposes of encouraging self-editing and providing reasonably fair disclosure to the court and opposing parties alike of their real trial intentions." Monfore v. Phillips, 778 F.3d 849, 851 (10th Cir. 2015); see also Brook

Vill. N. Assocs. v. Gen. Elec. Co., 686 F.2d 66, 71 (1st Cir. 1982). That said, a court may greenlight the modification of a pretrial order when there will be little to no "surprise" or prejudice to the opposing party and when it is "warranted to prevent substantial injustice" to the moving party. Meaux Surface Prot., Inc. v. Fogleman, 607 F.3d 161, 167 (5th Cir. 2010); see Davey v. Lockheed Martin Corp., 301 F.3d 1204 (10th Cir. 2002); Carroll v. Pfeffer, 262 F.3d 847, 850 (8th Cir. 2001), cert. denied, 536 U.S. 907 (2002). On the flipside, if the party seeking to modify had knowledge of the reason for modification prior to the pretrial conference, or if the modification would prejudice the opposing party, then it may not be allowed. See, e.g., Harper v. Albert, 400 F.3d 1052, 1063 (7th Cir. 2005); Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604 (5th Cir. 1989); Burnette v. Dresser Indus., Inc., 849 F.2d 1277 (10th Cir. 1988). "The party moving to amend the order [here, CSILO] bears the burden to prove the manifest injustice that would otherwise occur." Wright v. City of St. Francis, KS, 95 F. App'x 915, 926 (10th Cir. 2004) (quoting Davey, 301 F.3d at 1208). And that burden is "a higher standard than is otherwise imposed." Farr Man & Co. v. M/V Rozita, 903 F.2d 871, 876 n.4 (1st Cir. 1990).

In the damages context, courts have permitted changes to pretrial orders where such an amendment would result in no surprise and it was supported by the evidence already in the record. See,

- 11 -

e.g., McAlister-Jones v. Foote, 720 F. App'x 971, 974-75 (11th Cir. 2017) (affirming district court's allowance of plaintiff's amendment to the pretrial order to include a claim for future lost wages, finding that the defendant would not have suffered substantial harm because he should have been aware of plaintiff's claim for future lost wages); Bennett v. Emerson Elec. Co., 64 F. App'x 708, 718-19 (10th Cir. 2003) (affirming the district court's allowance of plaintiff's amendment to the original pretrial order the day before trial to seek additional damages, finding that the additional damages amount had been part of the discovery exchanged between the parties, had been alleged in plaintiff's expert report, and addressed in the expert's deposition).

In contrast, where an amendment to a pretrial order related to damages raised issues too close to trial and without support in the already-existing record, courts have declined to allow such amendments. See, e.g., Genesis Health Clubs, Inc. v. LED Solar & Light Co., 639 F. App'x 550, 557 (10th Cir. 2016) (finding no abuse of discretion where the district court denied plaintiff's request to pursue a damages theory after the close of discovery where such theory was not included in the pretrial order and such a late inclusion would have prejudiced the defendant); Quick Techs., Inc., v. Sage Grp. PLC, 313 F.3d 338, 345-46 (5th Cir. 2002) (affirming the district court's rejection of plaintiff's new proposed pretrial order submitted "shortly before

- 12 -

trial" that added a damages claim for corrective advertising); Knapp v. Whitaker, 757 F.2d 827, 849 (7th Cir. 1985) (affirming the district court's refusal to permit an amendment to the pretrial order to include punitive damages where "[t]he pretrial order made no mention of punitive damages and [plaintiff] offer[ed] no reasonable explanation for his undue delay in filing such a claim[, and] . . . the untimely filed punitive damage claim would have clearly prejudiced the defendants who invested a year preparing their defense to the allegations pleaded, without any notice of a punitive damage claim"); Rock Island Imp. Co. v. Helmerich & Payne, Inc., 698 F.2d 1075, 1081-82 (10th Cir. 1983); Jacobson v. Rose, 592 F.2d 515, 519 n.5 (9th Cir. 1978); Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P., 184 F.R.D. 526 (D.N.J. 1998) (denying leave to amend joint final pretrial order to include new expert opinion testimony on damages where discovery had been closed for one and one-half years, the parties had raised damages previously, the movant's expert had no knowledge of the case, and the nonmovant's expert had never opined on damages); Wright, 95 F. App'x at 927 (affirming the district court's refusal to allow family members to amend pretrial order to assert claims for damages against police officers in their individual capacities, relying on the family's representations "both at the pretrial conference and in the pretrial order itself," that it was pursuing only "official capacity claims").

So, we ask, is CSILO's request to amend the Pretrial Order a minor request, supported by the record and one that would not prejudice JCR, McAlister-Jones, 720 F. App'x at 974-75, and absent which CSILO would suffer "manifest injustice," Rodríguez-García, 610 F.3d at 774, such that the district court abused its discretion in denying the request? Or was the district court right to deny the request, finding that modifying the Pretrial Order, three years in and on the eve of trial and after the close of discovery, would have prejudiced JCR? Genesis Health Clubs, 639 F. App'x at 557. CSILO argues the former, contending that because it is due (three times) the full contract price, and the contract price appeared in the record multiple times and was uncontroverted by JCR, an amendment to the Pretrial Order would not have surprised or prejudiced JCR. JCR, of course, disagrees that CSILO is entitled to the full contract price and contends that the request was based entirely on a false premise, and such a late-stage amendment would have severely prejudiced JCR, and therefore the district court did not abuse its discretion. To settle this, we turn to the substantive law undergirding this case, and the damages it allows.

CSILO brought its case under the False Claims Act, which "prohibits a person from 'knowingly present[ing], or caus[ing] to be presented, [to an officer or employee of the United States Government,] a false or fraudulent claim for payment or approval.'"

- 14 -

U.S. ex rel. Feldman v. van Gorp, 697 F.3d 78, 86–87 (2d Cir. 2012) (alteration in original) (quoting 31 U.S.C. § 3729(a)(1)(A)). "The Act does not specify how damages are to be calculated." Id. at 87. The government needs to have only suffered the damage "because of" the violation of the Act. 31 U.S.C. § 3729(a)(1); see also The False Claims Act: Fraud Against the Government § 6:3. The legislative history to the FCA explains why it offers no specific formula for damages:

> No single rule can be, or should be, stated for the determination of damages under the Act . . . [T]he courts should remain free to fashion measures of damages on a case-by-case basis. The Committee intends that the courts should be guided only by the principles that the United States' damages should be liberally measured to effectuate the remedial purposes of the Act, and that the United States should be afforded a full and complete recovery of all its damages.

S. Rep. No. 96-615, at 4 (1980) (reporting on S.1981, predecessor to S.1562). "In most FCA cases, damages are measured as they would be in a run-of-the-mine breach-of-contract case -- using a 'benefit-of-the-bargain' calculation in which a determination is made of the difference between the value that the government received and the amount that it paid." Feldman, 697 F.3d at 87 (quoting United States v. Foster Wheeler Corp., 447 F.2d 100, 102 (2d Cir. 1971)). Generally, "[t]he Government's actual damages are equal to the difference between the market value of the [goods] it received and retained and the market value that the [goods]

would have had if they had been of the specified quality." United States v. Bornstein, 423 U.S. 303, 316 n.13 (1976) (collecting cases from the Second, Fourth, Fifth, and Eighth Circuits); Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 1372 (Fed. Cir. 1998) (following Bornstein); United States v. Killough, 848 F.2d 1523, 1532 (11th Cir. 1988) ("[T]he measure of damages [in FCA cases] is generally determined to be the difference between what the government actually paid on the fraudulent claim and what it would have paid had there been fair, open and competitive bidding." (citing Brown v. United States, 524 F.2d 693, 706 (Ct. Cl. 1975); United States v. Woodbury, 359 F.2d 370, 379 (9th Cir. 1966)); see also United States v. Sci. Applications Int'l Corp., 626 F.3d 1257, 1278 (D.C. Cir. 2010) ("In a case where the defendant agreed to provide goods or services to the government, the proper measure of damages is the difference between the value of the goods or services actually provided by the contractor and the value the goods or services would have had to the government had they been delivered as promised.").

As far as CSILO has been able to show us and from what we have been able to find, FCA cases where the entire contract price is awarded as damages relate to contracts that provided "no tangible benefit to the government and [where] the intangible benefit is impossible to calculate." U.S. ex rel. Longhi v. Lithium Power Techs., Inc., 575 F.3d 458, 473 (5th Cir. 2009); see

also <u>Feldman</u>, 697 F.3d at 88.  To elaborate:  in <u>Longhi</u>, the Department of Defense ("DoD"), under the Small Business Innovation Research ("SBIR") program, was to "provide research assistance to small businesses in order to maintain and strengthen the competitive free enterprise system and the national economy."  575 F.3d at 462.  To that end, "the DoD identifie[d] specific research projects that it [wa]s interested in funding and allow[ed] small businesses to seek SBIR grants for these projects."  <u>Id.</u>  The defendants in that case "submitted . . . proposals . . . to the Ballistic Missile Defense Office ("BMDO") . . . and . . . the Air Force" to receive funding "that could lead to the development of very thin rechargeable batteries."  <u>Id.</u>  The DoD reviewed the grant applications, <u>id.</u> at 463, and entered into contracts with defendants, which

> did not produce a tangible benefit to the BMDO or the Air Force.  These were not, for example, standard procurement contracts where the government ordered a specific product or good. The end product did not belong to the BMDO or the Air Force.  Instead, the purpose of the SBIR grant program was to enable small businesses to reach [a phase] where they could commercially market their products.

<u>Id.</u> at 473.  The court ultimately found that "[t]he BMDO and the Air Force's intangible benefit of providing an 'eligible deserving' business with the grants was lost as a result of the Defendants' fraud," and accordingly, "where there is no tangible benefit to the government and the intangible benefit is impossible

to calculate, it is appropriate to value damages in the amount the government actually paid to the Defendants," -- that is, the full contract price.  Id.

In Feldman, the government entity also reviewed the applications for government funding and awarded funds accordingly. 697 F.3d at 84.  There, the court affirmed the damages award of the full contract price where the National Institutes of Health ("NIH") had awarded a grant and was paying for a program "that was not at all as specified . . . the government did not receive less than it bargained for; it did not get the [research] program it bargained for at all."  Id. at 88-91.  Through the grant, the NIH had attempted to "promote 'child and adult clinical and research neuropsychology with a strong emphasis upon research training with HIV/AIDS,'" id. at 88, but the recipients-defendants' program's deficiencies demonstrated that none of that had happened.  Id. at 91.  The court reaffirmed that "nothing in the record indicate[d] that [NIH] could now secure such a program at any lesser cost," "conclud[ing] that the appropriate measure of damages in [the] case [wa]s the full amount the government paid based on materially false statements."  Id.

In both Longhi and Feldman, the government had doled out grant monies directly to third-parties for specified, "intangible" research projects, but the awardees had failed to effectuate that research.  Longhi, 575 F.3d at 473; Feldman, 697 F.3d at 88.  As

such, the government was out of a fixed sum of money with nothing at all in return and therefore the courts found that recompense of the full contract price was all that could make the government whole. As the court in Feldman explained:

> This approach rests on the notion that the government receives nothing of measurable value when the third-party to whom the benefits of a governmental grant flow uses the grant for activities other than those for which funding was approved. In other words, when a third-party successfully uses a false claim regarding how a grant will be used in order to obtain the grant, the government has entirely lost its opportunity to award the grant money to a recipient who would have used the money as the government intended.

697 F.3d at 88. The facts that CSILO presents are a far cry from those in Longhi and Feldman. Here, CSILO received ARRA funds from the government before it entered into a relationship with JCR. Once it decided to use those funds to fix its facility's roof, it sought bid proposals from third-parties. It ultimately awarded the bid to JCR, relying on JCR's false representations (the 15-year warranty), and paid JCR with its ARRA funds. JCR then fixed the roof -- the "activit[y] . . . for which funding was approved," Feldman, 697 F.3d at 88, albeit in a shoddy manner requiring subsequent repairs (the CSILO roof was still leaking as of the federal trial). This does not follow the pattern in Longhi and Feldman where government entities DoD and NIH, respectively, directly meted out funds for research to recipients that never

made good on their grant application promises in any way whatsoever. Longhi, 575 F.3d at 473; Feldman, 697 F.3d at 88. Nor is it clear that the government received something "valueless," U.S. ex rel. Compton v. Midwest Specialties, Inc., 142 F.3d 296, 304 (6th Cir. 1998), in this case: research that was never consummated is different from a defectively patched roof on a government-funded facility, especially where the latter's condition may, nonetheless, have been improved over its initial state and further remediated by a method not yet explored. But without the benefit of evidence of damages in the record, we do not know what value, if any, to ascribe to the work already done on CSILO's roof, and it is far from clear that CSILO should be entitled to recover the full price it paid out particularly where some work was in fact done. Compare id. (awarding full contract price damages where the goods delivered by defendant to the U.S. Army "were completely valueless, not only because most of them could not withstand 5,000 pounds of force, but also because *none* of them came with the quality assurance of a product that had been subjected to periodic production testing") with U.S. ex rel. Wall v. Circle C Constr., LLC, 868 F.3d 466, 470-71 (6th Cir. 2017) (rejecting "the government's argument that [defendant's] electrical work was worthless," and therefore declining to award the full contract price). We therefore find that CSILO has not persuaded us that it would have been entitled to the full contract

price paid to JCR, and so CSILO's request to amend the Pretrial Order was not necessarily as simple as it made it out to be.[9]

**BRINGING IT ALL TOGETHER**

Considering the high bar set to amend a pretrial order, Monfore, 778 F.3d at 851; Brook Vill. N. Assocs., 686 F.2d at 71, and the lack of record evidence as to the damages CSILO would have been entitled to under the FCA, Feldman, 697 F.3d at 88, we find that the district court did not abuse its discretion when it decided, over three years into litigation, with discovery closed and trial less than a month away, that CSILO's request to amend the Pretrial Order would not have caused it "manifest injustice," Rodríguez-García, 610 F.3d at 774, and would have instead caused prejudice and hardship to JCR, Genesis Health Clubs, 639 F. App'x at 557, and therefore denied it. And so we **affirm**.[10] Each side shall bear its own costs.

---

[9] Even had CSILO established that it was entitled to the full contract price, it is still possible that the district court would have been within its discretion to deny CSILO's request to amend the Pretrial Order. But we need not opine on that issue here.

[10] CSILO also appeals the district court's denial of its Motion to Reconsider the district court's denial of CSILO's Motion to Amend the Pretrial Order. We reject this as well, as "a motion for reconsideration may only be granted if the original judgment evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Global Naps, Inc. v. Verizon New Eng., Inc., 489 F.3d 13, 25 (1st Cir. 2007). We "will not overturn the court's determination 'unless a miscarriage of justice is in prospect or the record otherwise reveals a manifest abuse of discretion.'" Meléndez v. Autogermana, Inc., 622 F.3d 46, 55 (1st Cir. 2010) (quoting Rivera v. Riley,

209 F.3d 24, 27 (1st Cir. 2000)); see also Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011); Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81 (1st Cir. 2008). Here, we do not find that the district court's original decision to deny CSILO's Motion to Amend the Pretrial Order "evidenced a manifest error of law," or that CSILO has been able to point us to any "newly discovered evidence" that should disrupt the district court's original judgment. If anything, the facts of this case show that nothing changed from the beginning of this drama in 2014 to the time when CSILO filed its first motion and subsequent motion for reconsideration. We therefore spy no abuse of discretion in the district court's denial of CSILO's Motion for Reconsideration.