**UNITED STATES of America ex rel. Brian WALL, Plaintiff–Appellee,**

v.

**CIRCLE C CONSTRUCTION, LLC, Defendant–Appellant.**

No. 14–6150.

United States Court of Appeals, Sixth Circuit.

Argued: July 30, 2015.

Decided and Filed: Feb. 4, 2016.

**ARGUED:** Timothy W. Burrow, Burrow & Cravens, P.C., Nashville, Tennessee, for Appellant. Ellen Bowden McIntyre, United States Attorney's Office, Nashville, Tennessee, for Appellee. **ON BRIEF:** Timothy W. Burrow, BURROW & CRAVENS, P.C., Nashville, Tennessee, for Appellant. Ellen Bowden McIntyre, United States Attorney's Office, Nashville, Tennessee, for Appellee.

Before: BATCHELDER, ROGERS, KETHLEDGE, Circuit Judges.

KETHLEDGE, J., delivered the opinion of the court in which BATCHELDER, joined, and ROGERS, J., joined in the result. ROGERS, J. (pp. 618–19), delivered a separate concurring opinion.

## OPINION

KETHLEDGE, Circuit Judge.

Samuel Johnson would have had little patience for this case. Johnson once re-

sponded to the metaphysics of George Berkeley—a contemporary English philosopher who argued that matter has no existence—by kicking a large stone and declaring, "I refute it thus." One can do rather the same thing with the government's theory here. The defendant, Circle C, is a contractor that built several dozen warehouses at an Army base. In doing so, over the course of seven years, the contractor (actually a subcontractor) paid a handful of electricians about $9,900 less than the Davis–Bacon wages specified in its contract with the Army. As a remedy for that underpayment, the government sought and obtained a damages award of $763,000. The government's theory in support of that award is that all of the electrical work, in all of these warehouses, is "tainted" by the $9,900 underpayment—and therefore worthless. The problem with that theory is that, in all of these warehouses, the government turns on the lights every day. We reject the government's theory, reverse the damage award, and remand for entry of an award of $14,748.

Circle C built 42 warehouses at Fort Campbell, an Army base that straddles the border between Kentucky and Tennessee. Circle C's contract with the Army required Circle C and its subcontractors to pay their employees above-market wages per the Davis–Bacon Act. *See* 40 U.S.C. § 3142. The contract also required Circle C to submit weekly "compliance statements" to the effect that Circle C and its subcontractors had paid its employees the required wages for the relevant week. In the course of building the warehouses in Kentucky, however, Circle C's subcontractor for electrical work, Phase Tec, underpaid its electricians a total of $9,916. That underpayment rendered false a number of Circle C's compliance statements, which in turn rendered Circle C liable to the government under the False Claims Act, 31

U.S.C. § 3729. About this much, everyone agrees.

█ The disagreement concerns the government's damages. Under the False Claims Act, the government may recover three times its "actual damages." *Id.* § 3729(a)(1)(G); *U.S. v. United Technologies Corp.*, 626 F.3d 313, 322 (6th Cir. 2010). Here, per the "taint" theory, the district court determined that the government's actual damages were $259,298.18, which was the entire amount that the government paid for Phase Tec's electrical work on the Kentucky warehouses. When trebled, that amount equals $777,894.54. From that amount the district court subtracted $15,000.00, which is the amount that Phase Tec has already paid the government in settlement for the same underpayment at issue here. That left the government with a net award of $762,894.54. We review the award for an abuse of discretion. *Hance v. Norfolk S. Ry.*, 571 F.3d 511, 517 (6th Cir.2009).

█ Actual damages are the difference in value between what the government bargained for and what the government received. *U.S. ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002). Here, the government bargained for two things: the buildings, and payment of Davis–Bacon wages. It got the buildings but not quite all of the wages. The shortfall was $9,916. That amount is the government's actual damages.

The government's accounting is more creative. First, as noted above, the government claims that all of Phase Tec's electrical work in the Kentucky warehouses is "valueless" because all of that work—the wiring, circuits, switches, everything, in every building—is tainted by Phase Tec's $9,916 underpayment to its electricians. That claim is belied by the government's own conduct in using the buildings.

Moreover, this putative taint washes out easily enough with money damages, particularly the treble-strength kind available here. This case is not like *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir.1998), where the contractor delivered defective brake-shoe kits for jeeps, or *Roby*, 302 F.3d at 648, where the contractor delivered a helicopter with a defective transmission that caused it to crash. In those cases the goods were worthless because they were dangerous to use. Nor is this case one where some unalterable moral taint makes the goods worthless to the government. Suppose that, contrary to the contract's terms, a contractor delivers uniforms manufactured by child laborers in Indonesia or silicon chips shipped from Iran. In those cases no award of money damages could remedy the contractor's breach. But here they can: the contract required Circle C to pay electricians $19 per hour, Phase Tec paid them only $16—and simply writing a check can make up the difference. Money damages provide a remedy for this sort of breach every day.

The government also argues that it should pay nothing for Phase Tec's work because the government would have suspended its payments had it known that Phase Tec was underpaying its workers (or at least two of them, which is all the record shows here). In determining actual damages, however, the relevant question is not whether in some hypothetical scenario the government would have withheld payment, but rather, more prosaically, whether the government in fact got less value than it bargained for. And here the government has received almost of all of the value (all but $9,916, to be exact) that it bargained for with respect to the electrical work at its Kentucky warehouses.

The argument also fails on its own terms. The regulations for the Davis–Bacon Act themselves provide that, if a contractor pays its workers less than required by the Act, the government "must withhold from payments due the contractor *an amount equal to the estimated wage underpayment* and estimated liquidated damages due the United States[.]" 48 C.F.R. § 22.406–9(a) (emphasis added). Here that amount equals about $9,900, not $259,000. *See also* 48 C.F.R. § 22.406–9(b) (directing government to "suspend" contract payments "until the agency has withheld sufficient funds to compensate employees for back wages"). Even the relevant regulations thus refute the government's argument.

Actual damages by definition are damages grounded in reality. And in the real world the government could not forever withhold all payments to a contractor for work on several dozen warehouses, and yet have the work continue to completion and the government continue to use the warehouses to this day. The damages the government seeks to recover here are fairyland rather than actual.

The award of damages in this case was an abuse of discretion. The government's actual damages, on this record, are $9,916. That amount tripled is $29,748. *See* 31 U.S.C. § 3729(a)(1)(G). Minus Phase Tec's $15,000 settlement payment, Circle C is liable for a total of $14,748. *See United States v. Bornstein*, 423 U.S. 303, 314, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976).

The district court's judgment is reversed, and the case remanded with instructions to enter judgment in favor of the United States in the amount of $14,748.

ROGERS, Circuit Judge, concurring.

I concur in the result. The key to this case is not that "the government turns on the lights every day" or "continue[s] to use the warehouses to this day." There are

undoubtedly situations where (1) it is not practical to return government-purchased services or goods but (2) provision of the services or goods violated public interests in ways in which it is difficult or impossible to place a market value. In such cases the government may still claim that the proper measure of damages is the amounts wrongly paid, while continuing to use the goods or take advantage of the services. The reason that such damages are not proper in the case before us is not that the goods are still being used, but instead that it is easy to place a market value on Davis–Bacon Act damages in particular.

Here the wiring has already been installed in the buildings, and no one argues that it should be ripped out and returned to the contractor. Moreover, the wiring has been provided in a way that contradicts statutory policy, i.e., installed by underpaid electricians. However, the market value of the public harm can be precisely ascertained: it is the amount of additional wages that should have been paid. There is no need to hypothesize prior nonacceptance of the goods or services in order to compensate the government for the public harm.

This contrasts with cases like the majority's example of computer chips from Iran. It may not be possible as a practical matter to remove and return the chips, and the government may still be using the chips every day. The chips are not defective like the jeep or helicopter parts in the cases distinguished by the majority. Another example would be the provision of a service, such as driving a truck without a required license (it is hard to undrive a truck). In such cases, the measure of damages may well be the amount that the government would have refused to pay if it had known in time, because there is no easily ascertainable alternative like the amount of extra pay owed under the Davis–Bacon Act.

The difference here is not so much that trade with Iran is immoral, any more than driving without a proper license is immoral. Instead, the difference has to do with the extent to which the value of the injury to the public interest is calculable in terms of market value. Our decision today is correct because the value of Davis–Bacon Act damages is readily ascertainable in market terms. My concern is that the majority opinion might be read to suggest more generally that the price of irreversibly provided goods or services—because still in use—cannot be the measure of False Claims Act damages. Such a suggestion would not be necessary to our holding.