RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA ex rel. BRIAN WALL,

*Plaintiff-Appellee,*

*v.*

CIRCLE C CONSTRUCTION, LLC,

*Defendant-Appellant.*

No. 16-6169

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:07-cv-00091—Kevin H. Sharp, Chief District Judge.

Argued: March 15, 2017

Decided and Filed: August 18, 2017

Before: BATCHELDER, ROGERS, and KETHLEDGE, Circuit Judges.

---

### COUNSEL

**ARGUED:** Timothy W. Burrow, BURROW & CRAVENS, P.C., Nashville, Tennessee, for Appellant. Melissa N. Patterson, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Timothy W. Burrow, BURROW & CRAVENS, P.C., Nashville, Tennessee, for Appellant. Melissa N. Patterson, Charles W. Scarborough, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

KETHLEDGE, J., delivered the opinion of the court in which BATCHELDER, J., joined. ROGERS, J. (pg. 7), filed a separate dissenting opinion.

---

**OPINION**

---

KETHLEDGE, Circuit Judge.  This case is before us for a third time.  The defendant, Circle C Construction, is a family-owned general contractor that built 42 warehouses for the United States Army in Kentucky and Tennessee.  In the course of building all those warehouses, over a period of seven years, a subcontractor, Phase Tech, paid two of its electricians about $9,900 less than the wages mandated by the Davis-Bacon Act.  That underpayment rendered false a number of "compliance statements" that Circle C submitted to the government along with its invoices.  As a result, the government thereafter pursued Circle C for nearly a decade of litigation, demanding not merely $9,900—Phase Tech itself had paid $15,000 up front to settle that underpayment—but rather $1.66 million, of which $554,000 was purportedly "actual damages" for the $9,900 underpayment.  The government's theory in support of that demand was that all of Phase Tech's electrical work, in all of the warehouses, was "tainted" by the $9,900 underpayment—and therefore worthless.  "The problem with that theory," we wrote in the last appeal, was that, "in all of these warehouses, the government turns on the lights every day." *United States ex rel. Wall v. Circle C Constr., LLC*, 813 F.3d 616, 617 (6th Cir. 2016). We therefore reversed a $763,000 judgment in favor of the government and remanded for entry of an award of $14,748—less than 1% of the government's demand.

Over the past decade, Circle C paid its attorneys an estimated $468,704 to defend against the government's claim.  In Circle C's view, Congress has contemplated situations like this one: a 1996 amendment to the Equal Access to Justice Act provides that, if a court awards damages to the federal government, but the government's original demand for damages was both "substantially in excess of the judgment finally obtained" and "unreasonable when compared with such judgment," then (subject to two exceptions) the court must "award to the [defendant] the fees and other expenses related to defending against the excessive demand."  28 U.S.C. § 2412(d)(1)(D).

Accordingly, on remand after the last appeal, Circle C moved under § 2412(d)(1)(D) for recovery of its attorneys' fees in this litigation.  But the district court denied the motion.  Citing

only legislative history—and indeed without first identifying any ambiguity in the words of the provision at issue, contrary to Supreme Court precedent, *see, e.g., Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 567-68 (2005)—the district court chose to put "aside the mathematical disparity between the damages demand [and] the eventual award[.]" Op. at 4. The court did so even though the actual words of the statute ("[a] demand by the United States . . . substantially in excess of the judgment finally obtained") specifically directed the court to consider that disparity. And otherwise the district court reasoned that the government's theory in support of its demand was "not unreasonable" simply because the court itself had twice accepted that theory. Op. at 3-4. Circle C then brought this appeal.

We review the district court's denial of Circle C's motion for an abuse of discretion. *See Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 882 (6th Cir. 2016). The relevant statutory scheme is straightforward. Title 31 U.S.C. § 3730(g) provides, "[i]n civil actions brought under this section by the United States, the provisions of section 2412(d) of title 28 shall apply." This case is undisputedly an action brought under § 3730 by the United States—which means that § 2412(d)(1)(D) (the fee-shifting section cited in Circle C's motion) "shall apply" here.

Yet the government ventures to argue that § 2412(d)(1)(D) does not apply. Section 3730(g) is entitled, "Fees and expenses to prevailing defendant." Circle C technically was not a prevailing defendant, because on remand the district court entered a judgment in favor of the government (albeit in an amount that was less than 1% of the amount the government initially sought). The government thus contends that § 2412(d)(1)(D) does not apply, because that section authorizes awards to *non*-prevailing defendants (in cases where, among other things, the government's demand was unreasonable). But that argument overlooks a basic principle of statutory construction, namely that a provision's title "cannot limit the plain meaning of the text." *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (citation omitted). And here the text of § 3730(g) could hardly be plainer: that subsection says that, in circumstances undisputedly present here, "the provisions of § 2412(d) of title 28 shall apply"—which means that *all* of those provisions apply, including § 2412(d)(1)(D).

Thus we turn to § 2412(d)(1)(D), which provides in relevant part:

> If, in a civil action brought by the United States . . . the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust.

Under this subsection, the party seeking fees bears the burden of proving (i) that the government's demand was substantially in excess of the award obtained by the judgment and (ii) that the government's demand was unreasonable compared to that judgment. *See United States v. One 1997 Toyota Land Cruiser*, 248 F.3d 899, 906 (9th Cir. 2001). Here, the government demanded $553,807.71 in purported actual damages, trebled to about $1.66 million. *See* 31 U.S.C. § 3729(a)(1)(G). And "the judgment finally obtained by the United States" was $14,748. To say that the government's demand was substantially in excess of the judgment, therefore, only understates matters.

That leaves the question whether the government's demand was "unreasonable" as that term is used in § 2412(d)(1)(D). Neither this circuit nor, so far as we can tell, any other has specifically interpreted the term "unreasonable" as used in that provision. But that term is hardly abstruse. As a matter of ordinary usage, "unreasonable" means "not governed by reason" or "exceeding reasonable limits; immoderate[.]" *The American Heritage Dictionary* 1957 (3d ed. 1994). And meanwhile there is a well-developed body of law concerning a similar inquiry under a related provision: namely, whether the government's position was "substantially justified" under § 2412(d)(1)(A). On that point, our court (along with numerous others) has held that "[t]he question of substantial justification is essentially one of reasonableness[.]" *United States v. 0.376 Acres of Land*, 838 F.2d 819, 827 (6th Cir. 1988) (internal quotation marks omitted); *see also, e.g.*, *Foley Constr. Co. v. U.S. Army Corps of Eng'rs*, 716 F.2d 1202, 1204 (8th Cir. 1983) (gathering cases). Thus, the inquiry under both provisions turns on reasonableness. We therefore look to the caselaw interpreting "substantially justified" under § 2412(d)(1)(A) to determine whether the government's demand was "unreasonable" under § 2412(d)(1)(D).

The Supreme Court has held that, to be "substantially justified" under § 2412(d)(1)(A), the government's position "of course" must be "more than merely undeserving of sanctions for

frivolousness[.]" *Pierce v. Underwood*, 487 U.S. 552, 566 (1988). To meet that standard, rather, the government's position must be "justified to a degree that could satisfy a reasonable person." *Id.* at 565.

The question, then, is whether the government's demand for $1.66 million as compensation for Phase Tech's $9,900 underpayment of its electricians, in a project spanning seven years, was justified to that degree. The short answer to that question, as we said in the last appeal, is that the damages the government sought to recover in this case were "fairyland rather than actual." *Wall*, 813 F.3d at 618.

A longer answer begins with the observation that actual damages are a simple concept, familiar to any first-year student in law school. In the context of this case, actual damages are simply "the difference in value between what the government bargained for and what the government received." *Id.* at 617 (citing *U.S. ex rel. Roby v. Boeing Co.*, 302 F.3d 637, 646 (6th Cir. 2002)). And here those damages were easy to calculate. "[T]he government bargained for two things: the buildings, and the payment of Davis-Bacon wages. It got the buildings but not quite all of the wages. The shortfall was $9,916. That amount [was] the government's actual damages." *Id.*

The government therefore faces strong headwinds—both common-sense and legal—in asserting that its demand for roughly $554,000 in actual damages, and $1.66 million overall, was reasonable nonetheless. The government's theory, as noted above, was that all of Phase Tech's electrical work was tainted by the $9,900 underpayment and therefore valueless to the government. As a matter of common sense, however, the government in fact benefits from that work every minute of every day. And legally, as we explained last time, the underpayment is easy to remedy with money damages. *Id.* at 618. True, goods or services can be legally worthless to the government if, for example, they are "dangerous to use," *id.*, or the damages from the contractor's breach are not "calculable in terms of market value." *Id.* at 619 (Rogers, J., concurring). But for reasons we have already explained, *see id.* at 617-18, those conditions are absent here—indeed, obviously absent. Thus, on this record, a reasonable person could not accept the government's argument that Phase Tech's electrical work was worthless.

The district court, as noted above, held that the government's theory was reasonable simply because the court itself had twice accepted the theory. But "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified." *Pierce*, 487 U.S. at 569. True, "a string of successes" in advocating a position might indicate the position is reasonable; but that is hardly what the government presents to us here. *Id.* Thus, in this case as in most cases, what matters is "the actual merits of the Government's litigating position." *Id*. The district court said nothing about those merits in denying Circle C's motion. And we have said enough about them already. The government's demand for $1.66 million as compensation for Phase Tech's $9,900 underpayment was unreasonable within the meaning of § 2412(d)(1)(D).

That means Circle C was entitled to a fee award unless it "committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(D). The district court did not reach this issue because it mistakenly thought that the government's demand was reasonable. Yet we choose to reach the issue because the parties have briefed it, the merits are clear, and this litigation has already persisted for nearly ten years. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446 (6th Cir. 2012).

We begin with the burden of proof. Typically, when a statute articulates a general rule, the burden of proving an exception rests with the party invoking it. *See N.L.R.B. v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 711 (2001). Here, under § 2412(d)(1)(D), when a party establishes that the government's demand was both excessive and unreasonable, the district court "shall" award fees to the defendant "unless" certain exceptions (*e.g.*, "bad faith" or "special circumstances") apply. 28 U.S.C. § 2412(d)(1)(D). Thus, the burden of proving "bad faith" or "special circumstances" under § 2412(d)(1)(D) rests with the government. *See id*.

As to these exceptions, the government first argues that Circle C "acted in bad faith." The Act does not define bad faith, but it is a common term of art. The sixth edition of Black's Law Dictionary—the one in effect at the time § 2412(d)(1)(D) was enacted—defines "bad faith" as "not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Black's Law Dictionary* 139 (6th ed. 1990). That definition nicely captures the term, and we adopt it here.

The government has not shown that the conduct giving rise to Circle C's $14,748 of liability in this case was driven by a sinister motive rather than the result of an honest mistake. Unlike many cases under the False Claims Act, this case did not involve a large-scale, systematic effort to defraud the government. *Compare, e.g.*, *United States v. Rogan*, 517 F.3d 449, 451 (7th Cir. 2008). Instead, Circle C submitted compliance statements that were inaccurate as to $9,900 of particulars in a project costing more than $20 million. Moreover, one of Circle C's co-owners, John Cates, testified that Phase Tech gave Circle C a "set price" for each building, which obscured the amount that Phase Tech paid each electrician. And both of Circle C's owners, Frances and John Cates, testified that they submitted the certifications on the honest belief that they were true. The government cites no evidence that shows otherwise.

Instead, the government contends that, "[b]y definition, a defendant who has been found liable under the False Claims Act has 'knowingly' made or caused 'false or fraudulent claims' on public money." Government Br. at 34 (quoting 31 U.S.C. § 3729(a)). Under the False Claims Act, however, "knowingly" is itself a term of art, which refers to three mental states: "actual knowledge," "deliberate ignorance," or "reckless disregard." 31 U.S.C. § 3729(b)(1)(A). The district court found that Circle C was reckless—the least culpable of these states—as to whether its compliance reports were accurate regarding the wages paid to Phase Tech's electricians (actually, on this record, just two of them). But "recklessness is a less stringent standard than bad faith[.]" *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C. Cir. 1992); *see also Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006) (citing *Wallace* for the same proposition). And on this record we see no reason to depart from that rule.

The government also argues that this case presents two circumstances that are special enough to "make an award unjust." 28 U.S.C. § 2412(d)(1)(D). First—in reference to the government's theory that all of Phase Tech's electrical work was worthless—the government says that, in applying § 2412(d)(1)(D), we should leave room to allow the government to present "novel but credible" interpretations of law. *See generally United States v. Winchester Mun. Utils.*, 944 F.2d 301, 306 (6th Cir. 1991). We have no quarrel with that proposition generally, but here the government's theory was not credible because it was unreasonable within the meaning of § 2412(d)(1)(D).

Second—and finally—the government warns that a fee award in this case would have a "chilling effect" on its efforts "to vigorously enforce" the False Claims Act. Gov't Br. at 13-14, 37. One should hope so. In this case the government made a demand for damages a hundredfold greater than what it was entitled to, and then pressed that demand over nearly a decade of litigation, all based on a theory that as applied here was nearly frivolous. The consequences for Circle C included nearly a half-million dollars in attorneys' fees. Section 2412(d)(1)(D) makes clear that the government must bear its share of those consequences as well.

\* \* \*

The district court abused its discretion when it denied Circle C's motion. We reverse the district court's June 17, 2016 Order and remand the case for an award to Circle C of "the fees and other expenses related to defending against the [government's] excessive demand," 28 U.S.C. § 2412(d)(1)(D), including, to the extent appropriate, fees incurred during this appeal and on remand.

---

**DISSENT**

---

ROGERS, J., dissenting.  The majority accepts that the Government does not owe fees if its position was "substantially justified."  That standard permits the Government to take reasonable litigating positions.  *See Pierce v. Underwood*, 487 U.S. 552, 566 (1988); *Glenn v. Commissioner of Soc. Sec.*, 763 F.3d 494, 498 (6th Cir. 2014).  It is a matter of judgment, however, whether the Government's litigating position in this case was reasonable.  Here the Government had already prevailed on its "taint" theory of damages before the two district courts that considered this suit, and it was also able to point to a line of cases where something like that theory had prevailed before this and other courts, *see, e.g., U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 304 (6th Cir. 1998); *United States v. Mackby*, 339 F.3d 1013, 1018–19 (9th Cir. 2003); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).  While it is true that we ultimately rejected the analogy to those cases in the context of this case, that rejection does not mean that those analogies were not "supported by law and fact" or not "justified to a degree that could satisfy a reasonable person," as required under the EAJA, *Glenn*, 763 F.3d at 498–99  (internal quotation marks omitted) (quoting *Pierce*, 487 U.S. at 565).  Under abuse of discretion review, where "substantial deference" is accorded to the judgment of the trial court, *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008), the district court's denial of fees should be affirmed.